687 So.2d 875 (1997)
Steffeni Michelle SMITH, Appellant,
v.
STATE of Florida, Appellee.
No. 95-03053.
District Court of Appeal of Florida, Second District.
January 22, 1997.
*876 James Marion Moorman, Public Defender, and John C. Fisher, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Tonja R. Vickers, Assistant Attorney General, Tampa, for Appellee.
PER CURIAM.
Steffeni Smith challenges her judgment and sentences for trafficking in methamphetamine, felony possession of cannabis, possession of drug paraphernalia, and carrying a concealed firearm. She argues that the trial court erred in denying her motion to suppress, which alleged that the stop of the vehicle was pretextual. She also argues that the evidence is insufficient to support her convictions. We affirm her convictions for trafficking in methamphetamine and possession of paraphernalia and reverse the remaining convictions.
In January 1994, Smith began a romantic relationship with Gerald Boyd. Boyd always had very large amounts of cash and access to drugs. During their two-month relationship, he supplied Smith with methamphetamine, money, and would take her on short trips to California. On March 25, 1994, Boyd came to Smith's home in Avon Park in his truck and asked her to go on a trip. Smith had no luggage, so Boyd allowed her to place some of her clothing and a few other items in two *877 of his bags, a carry-on bag and a briefcase, along with his belongings. Boyd placed some of her toiletries in his toiletry bag. She carried a small amount of marijuana in her only bag.
Boyd drove north on Highway 27, toward Palatka. They passed some law enforcement officers who were parked on the median of the highway. Troopers Williams and Tyndall were working felony drug interdiction. Williams stopped Boyd's truck because it had a fluorescent tag light which was only readable from fifteen feet or closer. He had made other stops for these lights. Williams told Boyd he had an improper tag light and asked him to step out of the truck. He issued a citation and engaged Boyd in casual conversation. Because Boyd seemed exceptionally nervous, Williams asked Boyd if he could search his truck, and Boyd consented. Williams then approached Smith and asked her if there were drugs or weapons in the truck. In turn, Smith asked Boyd whether there were guns in the truck because she knew Boyd occasionally carried a gun. Boyd equivocated and then admitted to having guns.
Thereafter, Williams brought out his K-9 dog, which was trained to detect narcotics, and did an exterior search of the truck. The dog alerted to the right rear door. When Williams opened the back door, the dog jumped in the truck and alerted to a black leather bag that was on top of the other luggage. The bag contained over $100,000 wrapped in bundles. The bundles were later shaken and tested, revealing the presence of methamphetamine and marijuana residue.
Meanwhile Trooper Tyndall arrived at the scene. He frisked Boyd and Smith and locked them in a patrol car. When they were removed from the car, they were searched, handcuffed, and formally arrested. Boyd possessed about $1,700 and a gold lighter. Smith possessed $360 and several gold necklaces. Another back-up officer inspected the patrol car where Boyd and Smith had been sitting and found a vial of powder and a glass pipe used to smoke methamphetamine.
The truck was searched at the scene and a more thorough search and inventory was done at a highway patrol station. The officers found currency, two police scanners, a radar detector, two pagers, a cellular phone, a beaker, approximately one pound of marijuana, one large and some small packages of methamphetamine totalling forty-five grams in weight, and paraphernalia. They also found three weapons in the truck. An unloaded nine-millimeter handgun was locked in a toolbox in the bed of the truck. A loaded .357 Ruger and ammunition were wedged down seven or eight inches between the driver's bucket seat and the center console. An unloaded shotgun or rifle containing ammunition in a storage compartment was under the luggage on the floor behind Smith's seat. There were no fingerprints on the weapons.
None of the luggage in the truck bore Smith's name. A black soft-sided tote bag with a tag bearing Boyd's name contained both men's and women's clothing. A green flight bag found in the back of the truck contained 461.99 grams of marijuana and $67,880 in wrapped bundles. The black tote bag which the dog alerted to contained $102,390. A tan bag found in the back seat contained $2,993, a note containing a chemical formula relating to the manufacture of methamphetamine, two notebooks containing handwritten notes about flight schedules between Florida and California and drug dealing accounts, money wrappers, address books, and a list of police radio signals. Smith's fingerprints were found in two of the notebooks.
Smith's purse contained a beeper, her clutch purse, and an airline's boarding pass. Another bag contained Smith's clothing and 3.08 grams of marijuana. A black leather briefcase found in the front passenger area of the truck contained some of Smith's possessions. It also contained a list of police radio codes and frequencies, money wrappers, an airline's boarding pass in Boyd's name, and a zip-up bank bag which held paraphernalia and methamphetamine.
On May 1, 1995, the state filed a second amended information charging Smith with trafficking in methamphetamine, possession of more than twenty grams of cannabis, possession *878 of drug paraphernalia, and carrying a concealed weapon. On August 1, 1994, the defense filed a motion to suppress evidence seized as the result of a pretextual stop. At the hearing on the motion, the trial court ruled that the stop was not pretextual and denied the motion to suppress. Following trial in May 1995, a jury found Smith guilty of trafficking in twenty-eight or more grams of methamphetamine, possession of more than twenty grams of cannabis, possession of drug paraphernalia, and carrying a concealed weapon.
Smith argues that the officers would not have stopped them for a dim tag light without another improper motive. However, in Whren v. United States, ___ U.S. ___, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the Supreme Court held that the temporary detention of a motorist is reasonable when an officer has probable cause to believe that the motorist has committed a traffic infraction. The Court stated that the reasonableness of the stop does not depend on the actual motivations of the officer. ___ U.S. at ___, 116 S.Ct. at 1774, 135 L.Ed.2d at 97-98. Since the officers in this case had probable cause to believe that Boyd's car had a dim tag light, the stop was reasonable, even though the officers also may have been on the look-out for drug traffic. Therefore, the trial court properly denied the motion to suppress.
However, we agree that the evidence is insufficient to support Smith's conviction for possession of more than twenty grams of cannabis. To establish constructive possession, the state must prove dominion and control over the contraband, knowledge of the contraband's presence, and knowledge of the illicit nature of the contraband. Hampton v. State, 662 So.2d 992 (Fla. 2d DCA 1995). If the contraband is found in a vehicle over which the accused has joint possession, the accused's knowledge of the presence of the contraband and her ability to control it will not be inferred but must be established by independent proof. Moffatt v. State, 583 So.2d 779 (Fla. 1st DCA 1991).
This proof must consist either of evidence of actual knowledge of the contraband's presence or evidence of incriminating statements and circumstances from which the jury reasonably might infer the accused's actual knowledge of the presence of the contraband.
A.C. v. State, 658 So.2d 1173, 1174 (Fla. 2d DCA 1995).
In this case, no record evidence connected Smith to the pound of marijuana. No fingerprints were found on the green flight bag containing the marijuana, and it contained none of Smith's clothing. The record only shows that the flight bag was in the truck with Smith. Mere proximity to contraband is insufficient to establish constructive possession. See Skelton v. State, 609 So.2d 716 (Fla. 2d DCA 1992); Rogers v. State, 586 So.2d 1148 (Fla. 2d DCA 1991). The only marijuana the state proved that Smith possessed was the small amount she admittedly carried in her bag. Therefore, we reverse the possession of a felony amount of cannabis and reduce the conviction to possession of a misdemeanor amount of cannabis.
Likewise, there was no evidence to show that Smith carried a concealed firearm. To convict a person of carrying a concealed firearm, the state must prove that the person knew she possessed the weapon and that she had it "on or about" her person. Wolfram v. State, 568 So.2d 992 (Fla. 5th DCA 1990). The guns were not visible from the front passenger seat. None of the weapons were registered to Smith. There were no fingerprints on the guns or any other evidence that Smith had handled or was aware of the location of the guns. Knowledge of the presence of a firearm within a vehicle cannot be presumed from joint possession of the vehicle. Green v. State, 586 So.2d 86 (Fla. 2d DCA 1991). Therefore, we reverse Smith's conviction for carrying a concealed firearm.
In contrast, the evidence supports Smith's convictions for trafficking in methamphetamine and possession of paraphernalia. Smith's possessions were found in Boyd's black briefcase which held paraphernalia and two or three containers of methamphetamine. Smith's fingerprints were found on notebooks in the tan bag, which also contained money and a chemical formula for methamphetamine. Methamphetamine and marijuana residue were found on the money. *879 Smith admitted that she had used Boyd's methamphetamine on some of their trips together, and police found a vial of methamphetamine and paraphernalia in the back of the patrol car where Smith and Boyd had been sitting. From this evidence, the jury could conclude that Smith was involved in Boyd's trafficking of methamphetamine and that she had possessed paraphernalia. Thus, we affirm these convictions.
Affirmed in part; reversed in part.
CAMPBELL, A.C.J., and SCHOONOVER and PATTERSON, JJ., concur.