EMAS, J.
 

 Anthony Mackey appeals his convictions for carrying a concealed firearm and possession of a firearm by a convicted felon, contending that the trial court erred in denying his motion to suppress. We affirm.
 

 The relevant facts are not in dispute: Officer May, a member of the City of Miami Police Department, was driving his marked patrol car in an area of Miami when he saw Mackey standing alone on one side of a fence by an apartment complex. There were several people standing on the other side of the fence. Officer May slowed down and, as he drove slowly by Mackey, noticed a solid object inside Mackey’s pocket. As he drew closer to Mackey, Officer May saw a “piece of the handle sticking out. Not much, but a piece enough for me to identify a firearm.” Based upon his training and experience, Officer May was able to identify the object as a firearm. The officer had no prior contact with Mackey, nor did he know whether Mackey had a permit to carry a concealed firearm. There was no evidence that Mackey was engaged in any other criminal or suspicious activity.
 

 Officer May got out of his vehicle, approached Mackey, and asked whether Mackey had anything on him. Mackey replied “no.” The officer asked Mackey if he could pat him down,
 
 [1]
 
 The officer pro
 
 *944
 
 ceeded to conduct a pat-down of Mackey’s pocket and felt the firearm he had seen earlier. Officer May retrieved the firearm and inquired whether Mackey had a permit to carry a concealed firearm. Mackey indicated he did not, after which Officer May arrested Mackey for carrying a concealed firearm. It was later determined that Mackey had a prior felony conviction, resulting in the additional charge of possession of a weapon by a convicted felon.
 

 Mackey filed a motion to suppress the firearm on the basis that the arresting officer lacked the necessary reasonable suspicion to initiate the investigatory stop which led to the pat-down and the discovery of the firearm. Following a suppression hearing, the trial court denied the motion to suppress. Mackey subsequently pled guilty to the two charges, reserving the right to appeal the denial of the dispos-itive motion to suppress. This appeal followed.
 

 A trial court’s ruling on a motion to suppress comes to us clothed with a presumption of correctness.
 
 Pagan v. State,
 
 830 So.2d 792, 806 (Fla.2002). The reviewing court must interpret the evidence and reasonable inferences from that evidence in a light most favorable to sustaining the trial court’s ruling, and we are bound by the trial court’s factual findings if they are supported by competent, substantial evidence.
 
 Id.
 
 The trial court’s application of the law to the historical facts are subject to
 
 de novo
 
 review.
 
 Id.
 

 Mackey argues here, as he did in the trial court, that the firearm should be suppressed because the two undisputed facts — that Mackey was carrying a firearm and the firearm was concealed
 
 [2]
 
 — do not, standing alone, provide reasonable suspicion to warrant an investigatory stop. Mackey contends that, since it is legal to carry a concealed firearm in Florida if you have a license to do so, the officer did not have reasonable suspicion unless and until he had reason to believe that Mackey did not have such a license. For this proposition, Mackey relies on the decision of
 
 Regalado v. State,
 
 25 So.3d 600 (Fla. 4th DCA 2010).
 

 In
 
 Regalado,
 
 a police officer was in his marked patrol car when he was approached by a citizen who advised the officer that “some guy was over there flashing his gun to a couple of friends.” The citizen explained that a man in a restaurant had raised his shirt, exposing the gun in his waistband to his friends at the table. The citizen said the man did not remove the gun from the waistband. The citizen provided the officer with a description of the man. As the officer and citizen were talking, Regalado walked by, and the citizen identified him as the man with the gun in the restaurant. The officer asked the citizen for his name, but the citizen refused because he was scared. The citizen then “took off.”
 
 Id.
 
 at 601.
 

 The officer began to follow Regalado and, as the officer got within six to eight feet of Regalado, Regalado turned and looked around. At that point, the officer observed a bulge in Regalado’s waistband. Based upon his training and experience, the officer believed it was the butt of a firearm. Because Regalado was nearing a crowd of people, the officer drew his service revolver and ordered the suspect to
 
 *945
 
 the ground. The officer conducted a pat-down, felt the object, determined it was a firearm, and retrieved it.
 
 Id.
 

 The trial court denied the motion to suppress. In a two-to-one opinion, the Fourth District reversed, framing the issue as “whether the stop met the
 
 Terry
 
 requirements.”
 
 Id.
 
 at 602. The Court held the stop did not meet the
 
 Terry
 
 requirements, explaining:
 

 [T]he only information received by the officer was that the individual had a gun. Possession of a gun is not illegal in Florida. Even if it is concealed, it is not illegal if the carrier has obtained a concealed weapons permit. Although the officer observed a bulge in Regalado’s waistband, which in his experience looked like a gun,
 
 no facts and circumstances were presented to show that Re-galado’s carrying of a concealed weapon was without a permit and thus illegal.
 
 The officer admitted in his testimony at the suppression hearing that he had not observed any criminal behavior. He did not see the defendant threaten anyone with a gun, nor had the anonymous tipster mentioned the defendant threatening anyone with a gun or even removing it from his pants. The officer did not observe any threatening act against him, which might provide sufficient reasonable suspicion of an assault to permit a Terry stop.
 
 The officer also did not know whether the defendant had a permit for carrying a concealed weapon.
 

 Id.
 
 at 604 (emphasis added) (internal citations omitted).
 

 Mackey readily and properly acknowledges that the precedent of this Court compels affirmance in the instant case. In
 
 State v. Navarro,
 
 464 So.2d 137 (Fla. 3d DCA 1984), this Court, sitting
 
 en banc,
 
 held that a police officer’s observation of a bulge under the clothing of an individual, which the officer in his training and experience determined to be “the outline of a firearm[,] amounted to
 
 probable cause
 
 to believe that the individual was carrying a concealed weapon, justifying not merely a pat-down, but a search.”
 
 Id.
 
 at 139.
 

 In
 
 Hernandez v. State,
 
 289 So.2d 16 (Fla. 3d DCA 1974), the defendant was arrested after an officer saw a portion of a firearm partially protruding from a pocket in his trousers. This Court determined that both the arrest (for carrying a concealed firearm) and the seizure of the firearm were proper.
 

 Mackey does not attempt to distinguish
 
 Navarro
 
 and
 
 Hernandez
 
 from the instant case. Rather, he asserts that
 
 Regalado
 
 is the more well-reasoned decision. We do not agree.
 

 Florida generally recognizes three categories of police-citizen encounters:
 

 1. A consensual encounter, which does not implicate any Fourth Amendment concerns, as the individual is free at any time to terminate the encounter with the police.
 
 See Florida v. Royer,
 
 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).
 

 2. An investigatory stop or temporary detention (also known as a
 
 Terry
 
 stop), which requires a reasonable suspicion that an individual has committed, is committing, or is about to commit a crime.
 
 See Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Fla. Stat. § 901.151(2)(1997) (“Florida Stop and Frisk Law”).
 

 3. A formal arrest, which must be supported by probable cause to believe that the individual has committed, or is committing, a crime.
 
 Popple v. State,
 
 626 So.2d 185 (Fla.1993).
 

 When Officer May first approached Mackey to ask him questions, the encounter was a consensual one, and no level of reasonable suspicion was required. When
 
 *946
 
 Officer May asked Mackey if he could conduct a pat-down search, the encounter remained a consensual one. However, when Mackey did not respond to this question and Officer May proceeded to conduct a pat-down search without Mackey’s consent, the encounter became an investigatory stop, for which Officer May needed reasonable suspicion. In addition, the pat-down search itself required Officer May to have probable cause to believe that Mack-ey was armed with a dangerous weapon.
 

 Mackey contends the arresting officer had no reasonable suspicion to detain him for carrying a concealed firearm. He begins by noting that it is generally not illegal to possess a firearm in Florida. Mackey then argues in his brief, relying again upon
 
 Regalado,
 
 that “since, under Florida law, carrying a concealed firearm is illegal only if the individual does not have a permit and since the officer had no information suggesting that defendant did not have a permit, the officer lacked reasonable suspicion to stop him for carrying a concealed firearm.” Whether, as a general proposition, mere possession of a firearm is not illegal in Florida,
 
 [3]
 
 it is beside the point. Mackey was not observed in mere possession of a firearm; rather, he was observed in possession of a
 
 concealed
 
 firearm, and the officer testified that he observed a “piece of the handle sticking out” of Mackey’s pocket, enabling the officer to identify it as a firearm. It is the concealment of the firearm, not merely its possession, which rendered Mackey’s conduct illegal, and authorized the officer’s actions in this case.
 
 [4]
 
 Moreover, Mackey’s argument necessarily overlooks the difference between an essential element of the crime and an exception, or affirmative defense, to the crime.
 

 Section 790.01, Florida Statutes (2010) provides in pertinent part:
 

 (2) A person who carries a concealed firearm on or about his or her person commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
 

 (3) This section does not apply to a person licensed to carry a concealed weapon or a concealed firearm pursuant to the provisions of s. 790.06.
 

 Under Florida law, the crime of carrying a concealed firearm is complete upon proof that the defendant knowingly carried a firearm that was concealed from the ordinary sight of another person.
 
 Smith v. State,
 
 687 So.2d 875 (Fla. 2d DCA 1997);
 
 Wolfram v. State,
 
 568 So.2d 992 (Fla. 5th DCA 1990).
 
 [5]
 
 The statutory provision which addresses the licensed carrying of a concealed firearm is contained in a subsection separate and distinct from the provision which prohibits the carrying of a concealed firearm. Thus, the absence of a license is not an element of the crime, but is considered an “exception” to the crime, and proof that a defendant possessed a
 
 *947
 
 license to carry a concealed firearm must be raised as an affirmative defense.
 
 Watt v. State,
 
 31 So.3d 238 (Fla. 4th DCA 2010).
 
 See also State v. Robarge,
 
 450 So.2d 855 (Fla.1984) (holding that under rules of statutory construction, if an exception is contained in a clause subsequent to the enactment clause of a statute, the exception is an affirmative defense rather than an element of the offense);
 
 accord Hodge v. State,
 
 866 So.2d 1270 (Fla. 4th DCA 2004).
 

 Mackey’s argument, and the holding in
 
 Regalado,
 
 taken to its logical conclusion, would require that a police officer not only have reasonable suspicion of criminal activity, but reasonable suspicion of the nonexistence of an affirmative defense to the crime. We decline the invitation to adopt such a holding, which is contrary to both precedent and common sense.
 
 [6]
 

 We affirm the trial court’s order denying the motion to suppress and, given
 
 Regala-do’s
 
 holding that an officer who observes an individual carrying a concealed firearm does not have reasonable suspicion to conduct a
 
 Terry
 
 stop, we certify express and direct conflict with the decision in
 
 Regala-do.
 

 Affirmed.
 

 [1]
 

 . There is nothing in the record to indicate whether Mackey responded to Officer May's request for consent to conduct the pat-down search.
 

 [2]
 

 . The law is well settled that a firearm which is partially visible may still be "concealed” for purposes of the crime of carrying a concealed firearm.
 
 See
 
 § 790.001 Fla. Stat. (2010) (defining "concealed firearm" as "any firearm ... which is carried on or about a person in such a manner as to conceal the firearm from the ordinary sight of another person.”);
 
 Ensor v. State,
 
 403 So.2d 349, 354 (Fla.1981) (holding that “absolute invisibility is not a necessary element to a finding of concealment under section 790.001”). Mackey does not contest the trial court’s factual determination that the firearm was "concealed."
 

 [3]
 

 .
 
 But see, e.g.,
 
 § 790.053 Fla. Stat. (2010) (prohibiting the open carrying of a firearm); § 790.22(3) Fla. Stat. (2010) (prohibiting generally the possession of a firearm by a minor).
 

 [4]
 

 . § 790.02 Fla. Stat. (2010) provides;
 

 The carrying of a concealed weapon is declared a breach of peace, and any officer authorized to make arrests under the laws of this state may make arrests without warrant of persons violating the provisions of s. 790.01 when said officer has reasonable grounds or probable cause to believe that the offense of carrying a concealed weapon is being committed.
 

 [5]
 

 .The standard jury instruction for the crime of Carrying a Concealed Weapon/Firearm (Fla. Std. J. Inst. (Crim.) 10.1) provides:
 

 To prove the crime of (crime charged), the State must prove the following two elements beyond a reasonable doubt:
 

 1. (Defendant) knowingly carried on or about [his][her] person (weapon alleged).
 

 2. The (weapon alleged) was concealed from the ordinary sight of another person.
 

 [6]
 

 . For example, an officer on patrol at midnight in a residential neighborhood observes an individual wearing dark clothing, gloves and a mask. The officer watches the individual enter the rear of a home through a broken window, below which lay shards of glass. Extending the argument advanced by Mackey, the officer would not have reasonable suspicion to justify an investigatory stop until the officer first determined that the individual did not have consent to enter the home.
 
 See e.g.,
 
 § 810.015(3) Fla. Stat. (2010);
 
 State v. Hicks,
 
 421 So.2d 510 (Fla.1982);
 
 Metales v. State,
 
 963 So.2d 989 (Fla. 4th DCA 2007) (lack of consensual entry is not an element of burglary, but an affirmative defense).