# Third District Court of Appeal

## State of Florida

Opinion filed January 8, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-0752
Lower Tribunal No. F22-16040
_____

**Jonathan Sheppard,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Milton Hirsch, Judge.

Carlos J. Martinez, Public Defender, and Nicholas A. Lynch, Assistant Public Defender, for appellant.

Ashley Moody, Attorney General, and Richard L. Polin, Chief Assistant Attorney General, and Daniel Colmenares, Assistant Attorney General, for appellee.

Before LOGUE, C.J., and EMAS, and SCALES, JJ.

SCALES, J.

Pursuant to a negotiated plea, the trial court found appellant Jonathan Sheppard guilty of one count of the unlicensed carry of a concealed firearm and one count of possession of a firearm by a convicted felon, sentencing him to three years of probation. Sheppard expressly reserved the right to appeal the legally dispositive issue of the trial court's denial of his motion to suppress.[1] In this appeal of his conviction and sentence, Sheppard challenges the trial court's January 5, 2023 order denying Sheppard's motion to suppress the firearm and admissions made by Sheppard after he was detained by police. We reverse Sheppard's conviction and sentence because the officers who detained Sheppard did not have a reasonable suspicion that Sheppard was engaged in a criminal activity.

## I.    Background

On September 1, 2022, Sheppard rode his bicycle through a "high-crime area" where police were conducting a surveillance operation unrelated to Sheppard. When Sheppard paused his bicycle, an officer observed him remove a gun from a waistband holster and transfer it into his backpack. The

---

[1] We have jurisdiction. See Fla. R. App. P. 9.140(b)(2)(A)(i) ("A defendant who pleads guilty or nolo contendere may expressly reserve the right to appeal a prior dispositive order of the lower tribunal, identifying with particularity the point of law being reserved.").

observing officer signaled a second officer to stop Sheppard. This officer removed Sheppard from the bicycle and placed him in handcuffs.

After being placed in handcuffs, Sheppard told the officers that he did not have a license (or permit) to carry a firearm. The police searched the backpack, found the gun, and arrested Sheppard for carrying a concealed firearm without a license[2] and for possessing a firearm as a convicted felon.[3]

Arguing that the police lacked reasonable suspicion to detain him, Sheppard moved to suppress both the firearm and his post-detention admission about possessing a firearm for which he was not licensed. On December 2, 2022, the trial court conducted a suppression hearing, and entered a January 6, 2023 order concluding that, despite evolving law on this subject, the trial court must follow this Court's decision in Mackey v. State, 83 So. 3d 942 (Fla. 3d DCA 2012) ("Mackey I"), and therefore was required to deny Sheppard's suppression motion. Reserving his right to appeal the trial court's dispositive order, Sheppard then pleaded guilty to both charges and received a sentence of three years of probation.

Sheppard timely appealed.

---

[2] See § 790.01(2), Fla. Stat. (2022).

[3] See § 790.23(1)(a), Fla. Stat. (2022).

3

**Analysis**[4]

The issue before us is whether, under the facts and circumstances of this case, the police officers had a reasonable suspicion of criminal activity to detain Sheppard before they seized Sheppard's firearm and acquired information about whether Sheppard was licensed to carry the firearm. The trial court concluded that, based on this Court's decision in Mackey I, the police officers had the requisite reasonable suspicion to detain Sheppard.

*A. Mackey I*

In Mackey I, a police officer noticed an object in Mackey's pocket that looked like a firearm. Based on the officer's observation of what appeared to be a concealed firearm, the officer first initiated a consensual encounter with Mackey,[5] asking Mackey if he had a firearm. After Mackey untruthfully answered "no," an investigatory stop[6] ensued in which the officer conducted

---

[4] In reviewing a trial court's ruling on a motion to suppress, the appellate court defers to the trial court's findings of fact that are supported by competent, substantial evidence, and considers the constitutional issues *de novo.* Harris v. State, 238 So. 3d 396, 399 (Fla. 3d DCA 2018).

[5] "A consensual encounter . . . does not implicate any Fourth Amendment concerns, as the individual is free at any time to terminate the encounter with the police. See Florida v. Royer, 460 U.S. 491 . . . (1983)." Mackey I, 83 So. 3d at 945. When there is a consensual encounter related to a concealed firearm, the law enforcement officer may demand to see the firearm owner's license and identification. § 790.06(1), Fla. Stat. (2022).

a pat-down search of Mackey. Mackey I, 83 So. 3d at 943-44. During the pat-down search, the officer found the firearm. After Mackey admitted it was unlicensed, the officer arrested Mackey for carrying a concealed firearm. Id.

Mackey filed a motion to suppress asserting that the officer did not have a reasonable suspicion for the investigatory stop. The trial court denied the motion to suppress and, after pleading guilty, Mackey appealed the denial order to this Court. Id. at 944.

On appeal, Mackey argued that, because it is legal to carry a concealed firearm, for a police officer to conduct an investigatory stop based on the presumed crime of the unlicensed carrying of a concealed weapon, the officer must have had a reasonable suspicion not only that Mackey was carrying a concealed firearm, but also that he was licensed to carry the firearm. Mackey argued that, because the police officer lacked any information regarding Mackey's licensure status, the stop and resulting search were unreasonable, and the firearm, as well as all admissions by Mackey, must be suppressed. Id.

---

[6] "An investigatory stop or temporary detention (also known as a Terry stop) . . . requires a reasonable suspicion that an individual has committed, is committing, or is about to commit a crime. See Terry v. Ohio, 392 U.S. 1 . . . (1968)." Mackey I, 83 So. 3d at 945.

5

In affirming the trial court's denial of Mackey's motion to suppress, this Court declined Mackey's invitation for this Court to adopt precedent from our sister court in Regalado v. State, 25 So. 3d 600 (Fla. 4th DCA 2010); instead, we relied on our prior precedent.[7] Certifying conflict with Regalado, we concluded that, because the police officer had observed what appeared to be a concealed firearm on Mackey's person, and because the text of the then-applicable statute criminalized possession of a concealed weapon, the requisite reasonable suspicion existed for the officer to stop and search Mackey. Mackey I, 83 So. 3d at 946. Critical to our Mackey I analysis was our observation that the then-applicable statutory provision criminalizing concealed carry provided that licensure of the defendant to carry the concealed firearm was an affirmative defense to, rather than an element of, the charge of carrying a concealed firearm. Id. at 946-47.[8]

---

[7] See State v. Navarro, 464 So. 2d 137 (Fla. 3d DCA 1984) and Hernandez v. State, 289 So. 2d 16 (Fla. 3d DCA 1974).

[8] The Court's observation in this regard was approved by the Florida Supreme Court in its review of Mackey I based on the asserted conflict between Mackey I and Regalado. Mackey v. State, 124 So. 3d 176, 181 (Fla. 2013) ("Florida's legislative scheme causes us to hold that licensure is an affirmative defense to a charged crime of carrying a concealed weapon . . . and the lack of a license is *not* an element of the crime.") ("Mackey II"). This Mackey II holding, though, may constitute *dictum* because our Supreme Court affirmed our Mackey I decision "[n]otwithstanding this holding." Id. at 181. In sum, the Supreme Court determined that, given the totality of the circumstances (i.e., the officer's observation of Mackey with a concealed

6

*B. 2015 Amendment to Section 790.01*

Possibly in response to our decision in Mackey I and our Supreme Court's decision in Mackey II, in its 2015 session the Florida Legislature amended section 790.01, expressly making non-licensure an *element* of, rather than an *affirmative defense* to, the crime of carrying a concealed weapon. Ch. 2015-44, § 1, Laws of Fla. The 2010 version of the statute under which Mackey was charged read, in relevant part, as follows:

> (2) A person who carries a concealed firearm on or about his or her person commits a felony of the third degree. . . .
>
> (3) This section does not apply to a person licensed to carry . . . a concealed firearm pursuant to the provisions of. s. 790.06.

§ 790.01(2), (3), Fla. Stat. (2010).

While the relevant statute under which Sheppard was charged read, in relevant part, as follows:

> (2) [A] person who is not licensed under s. 790.06 and who carries a concealed firearm on or about his or her person commits a felony of the third degree. . . .

§ 790.01(2), Fla. Stat. (2022).

Because Sheppard was charged under this revised version of the statute, Sheppard argues, as he did below, that Mackey I is no longer

---

weapon in a high crime neighborhood coupled with Mackey's lying to the officer), the officer had reasonable suspicion to conduct an investigatory stop. Id. at 184.

7

controlling. Sheppard asserts that, for the officer to have constitutionally initiated the investigatory stop based on a presumed violation of section 790.01(2), the officer must have had a reasonable suspicion of *both* the concealed carry and the unlicensed status of the person carrying the firearm. The State argues that, irrespective of the statutory change, the context of both Sheppard's presence in a high crime area and his relocating his firearm from waistband to backpack provided the officer a reasonably objective suspicion that Sheppard "has committed, is committing or is about to commit" a crime, thus justifying the investigatory stop.

### C. *Our holding*

We agree with Sheppard and conclude that, under the specific facts and circumstances presented in this case, the statutory change to section 790.01 – making non-licensure an element of, rather than an affirmative defense to, the crime – significantly undercuts the applicability in this case of our holding in Mackey I.[9] Indeed, the 2015 amendment to section 790.01 renders Mackey I dispositively distinguishable.

Prior to the investigatory stop phase, Mackey and the officer had a consensual encounter. Mackey I, 83 So. 3d at 945-46. It was through

_____

[9] The Florida Legislature amended section 790.01 again in 2023, though it retained licensure as an element of the crime of carrying a concealed weapon.

8

information gained during this consensual encounter – Mackey's lying about his possession of a gun – that circumstances evolved such that the requisite reasonable suspicion arose warranting the officer's investigatory stop and pat-down search of Mackey. The police officer's observations of Mackey carrying a concealed firearm – a crime under the then-applicable version of section 790.01 – in a high crime area, coupled with Mackey's lying to the officer about the firearm, created the requisite reasonable suspicion. Mackey II, 124 So. 3d at 184 ("[H]e knew that Mackey was lying. When the person blatantly lied to the police officer here about possession of a firearm while he was in a geographic area well known for illegal narcotics and firearms with the weapon in view, we conclude that the officer had a reasonable . . . suspicion that the person may have been engaged in illegal activity[.]").

In the instant case, there was no consensual encounter between officers and Sheppard prior to the officer's investigatory stop of Sheppard. Thus, not only had the relevant statute changed, but, unlike with Mackey, the universe of information available to the officer to develop a reasonable suspicion of Sheppard was limited to the officer's observations. While the officer observed Sheppard with a concealed weapon in a high crime area, under the revised statute making non-licensure an element of the crime of concealed carry, Sheppard's mere possession of the concealed weapon did

9

not constitute criminal activity. See Kilburn v. State, 297 So. 3d 671, 675 (Fla. 1st DCA 2020) ("[T]he 2015 statutory change made it even more clear that a law enforcement officer may not use the presence of a concealed weapon as the sole basis for seizing an individual.").

Thus, we are compelled to conclude that the officers lacked the requisite reasonable suspicion to conduct the subject investigatory stop. Kilburn, 297 So. 3d 674 (holding that a Terry stop requires a reasonable suspicion of criminal activity, and that carrying a concealed firearm is not in itself illegal). And, because the officer's stop of Sheppard was effectuated without the requisite reasonable suspicion, the trial court should have granted Sheppard's motion to suppress. See Carter v. State, 389 So. 3d 759, 765 (Fla. 2d DCA 2024); Kilburn, 297 So. 3d at 674; Regalado v. State, 25 So. 3d 600, 606 (Fla. 4th DCA 2009) ("Based upon our understanding of both Florida and United States Supreme Court precedent, stopping a person solely on the ground that the individual possesses a gun violates the Fourth Amendment."). We, therefore, vacate Sheppard's conviction and sentence, reverse the trial court's order denying Sheppard's motion to suppress, and remand for the trial court to enter an order granting the motion to suppress and to conduct further proceedings not inconsistent with this opinion.

Reversed and remanded with instructions.