**FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 24-12112

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JDDARRIAN CHRISTOPHER IRONS,

*Defendant-Appellant.*

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:23-cr-00136-SPC-NPM-1

————————————————

Before WILLIAM PRYOR, Chief Judge, and ABUDU and TJOFLAT, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether a federal firearms offender is entitled to a reduction of his sentence. After Jddarrian Irons pleaded guilty to possessing a firearm as a felon, the district

court sentenced him to 46 months in prison and three years of supervised release. The district court calculated a base offense level of 20 under section 2K2.1(a)(4)(A) of the Sentencing Guidelines because it concluded that Irons had a prior conviction for a "crime of violence." It applied a four-level enhancement under section 2K2.1(b)(6)(B) because it concluded that Irons possessed a firearm "in connection with another felony offense." And it ordered Irons to obtain his GED and subject himself to searches of his computer as conditions of supervised release. We affirm the calculation of Irons's base offense level and the four-level enhancement, but we vacate the two conditions of supervised release and remand for resentencing.

## I. BACKGROUND

On October 5, 2023, a Fort Myers police officer conducting undercover surveillance at an apartment complex spotted Jddarrian Irons with a "distinctive white and multi-colored fanny pack around his waist." Irons entered the front passenger seat of a nearby vehicle before it drove away. Another officer stopped the vehicle because Irons was not wearing a seatbelt. Officers smelled burnt marijuana in the vehicle and asked the occupants to exit. As Irons stepped out, one of the officers observed Irons's fanny pack "wedged between the passenger seat and the door." The officers discovered a handgun in the fanny pack.

A grand jury indicted Irons for possessing a firearm as a felon because he had a prior felony conviction for attempted carjacking. *See* 18 U.S.C. § 922(g)(1); FLA. STAT. §§ 812.133(1)–(2), 777.04(1),

(4)(c). Irons pleaded guilty a few months later. A probation officer prepared a presentence investigation report recommending a base offense level of 20 under section 2K2.1(a)(4)(A) of the November 2023 Sentencing Guidelines because Irons's prior conviction for attempted carjacking was a "crime of violence." The report also recommended a three-level reduction for acceptance of responsibility. "Based upon a total offense level of 17 and a criminal history category of III," the report stated that the guideline imprisonment range was 30 to 37 months.

Irons did not object to the report's calculation of his base offense level or his criminal history. The government agreed with most of the report but contended that Irons should receive a four-level enhancement under section 2K2.1(b)(6)(B) of the guidelines because he possessed a handgun "in connection with the Florida felony crime of Carrying a Concealed Firearm." *See* FLA. STAT. § 790.01(3). The district court agreed with the government and applied the enhancement over Irons's objection for a total offense level of 21 and a guideline imprisonment range of 46 to 57 months. The district court sentenced Irons to 46 months in prison and three years of supervised release.

The district court imposed several discretionary conditions of supervised release. It stated at the sentencing hearing that Irons would be "subject to search" of his "person," "residence," "place of business," "storage units," and "vehicle." It later stated that it "want[ed]" Irons "to get [his] GED." In its written judgment, the

district court stated that Irons "shall obtain his GED while on supervision" if "not obtained while incarcerated." The judgment added that Irons "shall submit to a search" of his "computer."

## II. STANDARDS OF REVIEW

We review interpretations of the Sentencing Guidelines *de novo* and findings of fact for clear error. *United States v. Bishop*, 940 F.3d 1242, 1250 (11th Cir. 2019). We review the imposition of discretionary conditions of supervised release *de novo* if the defendant "had no opportunity to object at sentencing." *United States v. Rodriguez*, 75 F.4th 1231, 1246 n.5 (11th Cir. 2023). When a defendant has an opportunity to object and "fails to raise an argument before the district court, we review only for plain error." *United States v. Johnson*, 694 F.3d 1192, 1195 (11th Cir. 2012).

## III. DISCUSSION

We divide our discussion into three parts. We first explain that the district court did not plainly err in calculating Irons's base offense level under section 2K2.1(a)(4)(A). We next explain that the district court did not err in applying a four-level enhancement under section 2K2.1(b)(6)(B). We then explain that the district court erroneously imposed two conditions of supervised release.

*A. The District Court Did Not Plainly Err in Calculating Irons's Base Offense Level under Section 2K2.1(a)(4)(A).*

Irons challenges the increase of his base offense level for his prior conviction of attempted carjacking. The Sentencing Guide-

lines assign a base offense level of 14 for felon-in-possession of-fenses. *See* United States Sentencing Guidelines Manual § 2K2.1(a)(6) (Nov. 2023). But the base offense level increases to 20 if the offender "committed any part of [his possession] offense sub-sequent to sustaining one felony conviction" for a "crime of vio-lence." *Id.* § 2K2.1(a)(4)(A). Irons argues that attempted carjacking does not constitute a "crime of violence."

Irons did not raise this argument at sentencing, so we review for plain error. A defendant asserting plain error must establish an "obvious" error that "affected his substantial rights" and "seriously affect[ed] the fairness, integrity or public reputation of judicial pro-ceedings." *United States v. Hill*, 119 F.4th 862, 866 (11th Cir. 2024) (alteration adopted) (citation and internal quotation marks omit-ted). An error is not obvious "unless the issue has been specifically and directly resolved by the explicit language of a statute or rule or on point precedent from the Supreme Court or this Court." *United States v. Sanchez*, 940 F.3d 526, 537 (11th Cir. 2019). Only holdings, not dicta, suffice. *United States v. Sammour*, 816 F.3d 1328, 1338 (11th Cir. 2016) (citation and internal quotation marks omitted).

The district court did not plainly err. Although section 2K2.1 does not define "crime of violence," section 4B1.2 defines the term to include "any offense under federal or state law, punishable by imprisonment for a term exceeding one year," that "has as an ele-ment the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a) (Nov. 2023). Florida carjacking satisfies these requirements. *See Cruller v. State*,

808 So. 2d 201, 204 (Fla. 2002) (describing "[t]he carjacking statute" as "a very specific subset of the more general robbery statute"); *Stokeling v. United States*, 139 S. Ct. 544, 548–49, 554 (2019) (holding that Florida robbery is a violent felony under the Armed Career Criminal Act); *United States v. Ochoa*, 941 F.3d 1074, 1107 (11th Cir. 2019) (consulting "decisions applying the [Armed Career Criminal Act] for guidance in considering whether an offense qualifies as a crime of violence under the Guidelines"). And the guidelines in effect when Irons was sentenced provide that "crime[s] of violence" include "attempt[s] to commit . . . any such offense." U.S.S.G. § 4B1.2(d) (Nov. 2023). Because Florida carjacking "qualifies as a crime of violence, so does its attempt." *United States v. Ott*, 166 F.4th 116, 119 (11th Cir. 2026).

Irons does not dispute that the district court correctly interpreted the November 2023 guidelines. He contends instead that the district court should have used the November 2021 guidelines in effect when he committed his felon-in-possession offense. We have held that "a defendant must be sentenced under the Guidelines in effect at the time when he committed the offense" if "applying the Guidelines in effect at the time of sentencing would result in a harsher penalty." *United States v. Kapordelis*, 569 F.3d 1291, 1314 (11th Cir. 2009). But this rule does not help Irons because it is not "obvious" that his sentence under the November 2021 guidelines would be any different. *Hill*, 119 F.4th at 866 (citation and internal quotation marks omitted).

The only relevant difference between the November 2021 and November 2023 guidelines is that the 2021 guidelines explain in a comment that "attempting to commit" a crime of violence is itself a "crime of violence," U.S.S.G. § 4B1.2 cmt. 1 (Nov. 2021), and the 2023 guidelines moved this comment into the text, U.S.S.G. § 4B1.2(d) (Nov. 2023). "[W]e have previously found that moving explanatory commentary to the text of the Guidelines, when it explains the meaning of a pre-existing provision of the Guidelines, constitutes a clarifying change." *United States v. Horn*, 129 F.4th 1275, 1300 (11th Cir. 2025). And clarifying changes "provide persuasive evidence of how the Sentencing Commission originally envisioned application" of an earlier guideline. *United States v. Jerchower*, 631 F.3d 1181, 1184 (11th Cir. 2011) (citation and internal quotation marks omitted). Indeed, the 2021 and 2023 guidelines expressly instruct sentencing courts to "consider subsequent amendments [that] . . . are clarifying rather than substantive changes." U.S.S.G. § 1B1.11(b)(2) (Nov. 2021); U.S.S.G. § 1B1.11(b)(2) (Nov. 2023). Because the 2023 amendment is plausibly clarifying, it supports an interpretation of "crime of violence" under the 2021 guidelines that includes an "attempt[] to commit" crimes of violence like carjacking. U.S.S.G. § 4B1.2 cmt. 1 (Nov. 2021); U.S.S.G. § 4B1.2(d) (Nov. 2023).

Irons counters that other factors suggest the 2023 amendment was substantive instead of clarifying. But the precedents he cites do not discuss the amendment—much less "specifically and directly" establish that it was substantive. *Sanchez*, 940 F.3d at 537; *see Horn*, 129 F.4th at 1300 (concluding that separate amendment

was clarifying); *United States v. Dupree*, 57 F.4th 1269, 1277–78 (11th Cir. 2023) (en banc) (interpreting pre-amendment version of guideline for "controlled substance offense[s]"); *United States v. Taylor*, 142 S. Ct. 2015, 2018–19, 2021–22 (2022) (interpreting "crime of violence" statute with no analogue to the Commission's 2021 commentary about inchoate offenses or its 2023 incorporation of the commentary into the text); *United States v. Lightsey*, 169 F.4th 1241, 1248, 1252 n.4 (11th Cir. 2026) (interpreting statute similar to the statute in *Taylor* and addressing the Commission's pre-amendment commentary in dicta). Moreover, our recent examination of the amendment explained that it moved the commentary to the text "without change" and shed light on questions about inchoate offenses that "may have been difficult" to answer beforehand. *Ott*, 166 F.4th at 117, 119 n.1. Irons cannot establish plain error.

### B. The District Court Did Not Err in Applying a Four-Level Enhancement under Section 2K2.1(b)(6)(B).

After calculating the base offense level, the district court applied a four-level enhancement because it determined that Irons "possessed [a] firearm . . . in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B) (Nov. 2023). The district court cited Florida's concealed-carry statute, which makes it a "felony of the third degree" to "carry[] a concealed firearm . . . on or about [one's] person" without being eligible for a license to carry. FLA. STAT. § 790.01(3). It is undisputed that Irons committed this felony offense.

Irons challenges the application of the enhancement on two grounds. He first maintains that his concealed-carry felony is not "another" felony offense because it was intrinsic to his felon-in-possession offense. He then asserts that he did not possess a firearm "in connection with" his concealed-carry felony because the firearm did not facilitate his unlawful concealment. We reject both arguments.

1. Irons's Concealed-Carry Violation Is "Another" Felony Offense.

A defendant commits "another" offense for purposes of section 2K2.1(b)(6)(B) when the offense is "different or distinct" from the offense of conviction. *Another*, WEBSTER'S THIRD NEW INT'L DICTIONARY 89 (1993); *accord* U.S.S.G. § 2K2.1 cmt. 14(c) (Nov. 2023). Two offenses involving different prohibited conduct are necessarily distinct. *See United States v. Jackson*, 276 F.3d 1231, 1234 (11th Cir. 2001); *United States v. Walker*, 771 F.3d 449, 452–53 (8th Cir. 2014). And offenses do not cease to be distinct simply because they were "committed contemporaneously." *Jackson*, 276 F.3d at 1234.

Irons's felon-in-possession conviction, 18 U.S.C. § 922(g)(1), and his concealed-carry violation, FLA. STAT. § 790.01(3), are distinct offenses. To establish the former, the government must prove that Irons knowingly possessed a firearm and knew he was a felon. *Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019). To establish the latter, the government must prove that Irons knowingly possessed a firearm and, without qualifying for a license, "carried [the firearm] on or about [his] person in such a manner as to conceal [it] from the ordinary sight of another person." *Dorelus v. State*, 747 So.

2d 368, 370 (Fla. 1999) (citation and internal quotation marks omitted); FLA. STAT. § 790.001(3). The additional element of concealment makes a concealed-carry violation different from—and more serious than—the possession prohibited by section 922(g). *See United States v. Hall*, 77 F.3d 398, 402 n.4 (11th Cir. 1996) (stating that concealed-carry violations have a higher "likelihood of immediate violence flowing from the crime" than felon-in-possession violations), *abrogated on other grounds by Johnson v. United States*, 576 U.S. 591 (2015); *Dorelus*, 747 So. 2d at 370 (explaining that the concealment element "is designed to prevent a person with a weapon from taking some undue advantage over an unsuspecting adversary" (citation and internal quotation marks omitted)).

Irons responds that his concealed-carry offense involved the "exact same" conduct as his felon-in-possession offense because both offenses occurred when he "possess[ed] the firearm in the fanny pack as a felon." *See* FLA. STAT. § 790.01(3) (reserving liability for concealed carriers who do not "meet the criteria" for obtaining a license to carry); *id.* § 790.06(2)(d) (providing that convicted felons are "ineligible" for a license to carry). But the conduct associated with those offenses is distinct, even if Irons committed them "contemporaneously." *Jackson*, 276 F.3d at 1234. Irons violated section 922(g)(1) by "exercis[ing] ownership, dominion, or control over the firearm," *United States v. Howard*, 742 F.3d 1334, 1341 (11th Cir. 2014), and he violated section 790.01(3) by placing the firearm out of sight, *Dorelus*, 747 So. 2d at 370. Because Irons "was not doomed to automatically commit the additional [concealment] felony when he violated [section] 922(g) by possessing a firearm as a

felon," *Walker*, 771 F.3d at 452–53 (citation and internal quotation marks omitted), the district court "did not err" in concluding that he committed two distinct offenses, *id.* (upholding invocation of section 2K2.1(b)(6)(B) based on Iowa statute punishing "a person who goes armed with a dangerous weapon concealed on or about the person" (quoting IOWA CODE § 724.4(1) (2014))).

### 2. Irons Possessed a Firearm "in Connection with" His Concealed-Carry Offense.

A defendant possesses a firearm "in connection with" another felony offense when the firearm "facilitates, or has the potential of facilitating, the other offense." *United States v. Brooks*, 112 F.4th 937, 950 (11th Cir. 2024) (citation and internal quotation marks omitted). The ways in which the government can satisfy this requirement are "expansive." *United States v. James*, 135 F.4th 1329, 1335 (11th Cir. 2025). For example, the government can establish that the firearm "potentially embolden[ed]" the defendant to commit the offense, the defendant "could have used the firearm" to complete the offense, or the firearm was "available for use as a weapon" if law enforcement "attempted to thwart" the offense. *Brooks*, 112 F.4th at 949–51 (alteration adopted) (citations and internal quotation marks omitted). The Supreme Court has also stated that a firearm facilitates an offense where the offense "would not have been possible" without it. *Smith v. United States*, 508 U.S. 223, 238 (1993). In short, a firearm facilitates a crime when it "ha[s] a role in the crime." *James*, 135 F.4th at 1335 (citation and internal quotation marks omitted).

Irons's possession of a firearm facilitated his concealed-carry offense because the firearm was an element of the offense. "To convict a person of carrying a concealed firearm, the state must prove that the person knew [he] possessed the weapon and that [he] had it on or about [his] person." *Smith v. State*, 687 So. 2d 875, 878 (Fla. Dist. Ct. App. 1997) (citation and internal quotation marks omitted). It "would not have been possible" for Irons to commit the concealed-carry offense under this standard without possessing a firearm. *Smith*, 508 U.S. at 238. So the firearm possession facilitated the offense by forming an "integral part" of it. *Id.* (citation and internal quotation marks omitted); *James*, 135 F.4th at 1335.

Irons objects that this understanding of facilitation conflicts with our decision in *Brooks*. But *Brooks* explained that "[w]e have repeatedly used *Smith* to interpret the phrase 'in connection with' for purposes of the Sentencing Guidelines, including [section] 2K2.1(b)(6)(B)." 112 F.4th at 952 n.6. And *Smith* made clear that a firearm facilitates another offense when the firearm is essential to that offense. Although *Brooks* affirmed a finding of facilitation because the defendant's access to a firearm permitted him to "protect his criminal activity," *id.* at 950–51 (citation and internal quotation marks omitted), nothing in *Brooks* forecloses the "simpler" theory of facilitation that applies when a firearm is "an essential element" of the other offense, *id.* at 953–54 (Grant, J., concurring).

Irons protests that *Smith* is distinguishable because the defendant there actively "use[d] . . . a gun in a barter" for drugs. But the enhancement applies when a defendant "used *or possessed* any

firearm . . . in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B) (Nov. 2023) (emphasis added). Irons's related argument that using the firearm would have required him to "remove it from the fanny pack" and "end[] the concealed carry offense" fails for the same reason. His *possession* of the firearm "had a role" in his concealed-carry violation either way. *James*, 135 F.4th at 1335 (citation and internal quotation marks omitted).

Irons also contends that the Sentencing Commission intended the enhancement to apply only where a firearm makes a second offense "more dangerous." But the text of section 2K2.1(b)(6)(B) says nothing about danger. And a firearm need not contribute to a crime in the "expected manner." *United States v. Young*, 115 F.3d 834, 837 (11th Cir. 1997). To the extent the Commission did not contemplate that section 2K2.1(b)(6)(B) would apply to concealed-carry violations, the guideline should "be applied in situations not expressly anticipated" by the Commission when the text compels it. *James*, 135 F.4th at 1335 (citation and internal quotation marks omitted). Based on the settled meaning of the text, Irons possessed a firearm "in connection with" his concealed-carry violation because the firearm made the violation possible.

### C. The District Court Erroneously Imposed Two Conditions of Supervised Release.

District courts have wide latitude to impose discretionary conditions of supervised release. *See* 18 U.S.C. § 3583(d). But they "must pronounce" those conditions "at the defendant's sentencing hearing," and they "cannot add to the defendant's sentence in a

written judgment entered after the sentencing hearing." *Rodriguez*, 75 F.4th at 1246. When a district court violates this rule, "we vacate the [additional] conditions and remand for resentencing." *United States v. Read*, 118 F.4th 1317, 1321 (11th Cir. 2024).

Irons's written judgment contains two discretionary conditions not pronounced at sentencing. First, the judgment requires him to "obtain his GED while on supervision" if "not obtained while incarcerated." But the district court never stated at the sentencing hearing that Irons must get his GED as a condition of his release. Second, the judgment requires him to "submit to a search of [his] . . . computer" upon "reasonable suspicion of contraband or evidence of a violation of a condition of release." But the district court told Irons at the hearing that he would be subject to searches of his "person," "residence," "place of business," "storage units," and "vehicle," without ever mentioning his computer.

The government offers four counterarguments. It first asserts that Irons has not identified a plain error. But Irons "had no opportunity to object at sentencing to the discretionary conditions of supervised release because they were included for the first time in the written judgment." *Rodriguez*, 75 F.4th at 1246 n.5. "We therefore review [his] legal argument *de novo*." *Id*.

The government next argues that the GED condition is not "ripe for adjudication" because the condition only applies if Irons does not obtain his GED in prison. "Ripeness prevents the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements." *United States v. Zinn*, 321

F.3d 1084, 1088 (11th Cir. 2003) (alteration adopted) (citation and internal quotation marks omitted). But there is nothing premature about Irons's challenge. Irons seeks to vindicate his "constitutional right to be present and represented by counsel when the district court pronounce[d] his sentence." *Rodriguez*, 75 F.4th at 1247. The district court *already* violated that right, and Irons asks us to remedy the violation so that he is no longer subject to a defective judgment that compels him to act. Irons's objection is ripe.

The government alternatively argues that the GED condition does not "unambiguous[ly] conflict" with the oral pronouncement because the district court informed Irons at sentencing "that it wanted him to obtain his GED." But the district court made that statement after it had moved on from "special conditions" to "forfeiture matters." At no point did the district court pronounce that Irons had to obtain his GED as a condition of supervised release. The district court instead suggested that Irons work on his GED "in the Bureau of Prisons" because Irons earlier stated that "he [was] interested in obtaining" it and because obtaining a GED would help Irons with his separate goal to get a commercial driver's license.

The government also argues that the computer-search condition was permissible because Irons knew at sentencing that he would be subject to searches of his "residence," and "courts have recognized that the authority to search a residence encompasses authority to search computers found there." This argument under-

states the condition the district court imposed. The written judgment provides that Irons must submit to searches of his residence *and* his computer—wherever his computer might be found. But at sentencing, the district court only referenced searches of Irons's "person," "residence," "place of business," "storage units," and "vehicle," without any mention of a computer. No reasonable defendant would hear that comprehensive list and think that unidentified items were part of it.

Because "the district court include[d] discretionary conditions in the written judgment" that it did not pronounce "at the sentencing hearing," we "vacate th[ose] conditions and remand for resentencing." *Read*, 118 F.4th at 1321. "On remand, the district court may, after giving [Irons] an opportunity to be heard, reconsider whether to impose each of the discretionary conditions." *Rodriguez*, 75 F.4th at 1249; *see* 18 U.S.C. § 3583(e)(2) (permitting district courts to "modify, reduce, or enlarge the conditions of supervised release . . . at any time prior to the expiration or termination of the term of supervised release").

## IV. CONCLUSION

We **AFFIRM** Irons's sentence of imprisonment, and we **VACATE** the defective conditions of supervised release and **REMAND** for resentencing.

24-12112  ABUDU, J., Concurring in Part and Dissenting in Part    1

ABUDU, Circuit Judge, Dissenting in part:

I agree with the portions of the Majority Opinion affirming the district court's calculation of Irons's base offense level, and in vacating the two conditions of supervised release.  However, the Majority also should have ruled that the district court erred in its application of the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B).  The Majority Opinion reasons that "Irons's felon-in-possession conviction, 18 U.S.C. § 922(g)(1), and his concealed-carry violation, FLA. STAT. § 790.01(3), are distinct offenses."  However, Section 2K2.1(b)(6)(B) requires more than mere overlap between two firearm-related offenses; it necessitates that the firearm facilitate, or have the potential to facilitate, another felony offense that is distinctive from the other.  Here, the firearm did not facilitate the concealed-carry offense; it constituted it.

## I. GOVERNING LEGAL STANDARD

Section 2K2.1(b)(6)(B) provides for a four-level enhancement if a defendant "used or possessed any firearm or ammunition in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6)(B) (Nov. 2023).[1]  A firearm is possessed "in connection with" another felony offense only when it "facilitated, or had the potential of facilitating, another felony offense."  *United States*

---

[1] The current 2025 Guidelines provide for a two-level enhancement under Section 2K2.1(b)(6)(B), rather than the four-level enhancement contained in the operative 2023 Sentencing Guidelines applicable to Irons's case.  *Compare* United States Sentencing Guidelines Manual § 2K2.1(b)(6)(B) (Nov. 2025) *with* United States Sentencing Guidelines Manual § 2K2.1(b)(6)(B) (Nov. 2023).

2    ABUDU, J., Concurring in Part and Dissenting in Part    24-12112

*v. Bishop*, 940 F.3d 1242, 1250 (11th Cir. 2019) (quotation marks and citation omitted) (involving challenge to Section 2K2.1(b)(6)(B) enhancement based on possession of firearm in connection with controlled substance offense).

Our precedent has long distinguished between mere firearm possession and possession that facilitates a separate felony offense. In *United States v. Jackson*, we explained that "there was a clear distinction between the conduct involved in [the defendant's] offense of conviction—illegal possession of a firearm—and the assault on which the enhancement was based; the former involved the mere carrying of a firearm on his person while the latter involved a violent struggle against his arrest." 276 F.3d 1231, 1234 (11th Cir. 2001). *Jackson* thus recognized that Section 2K2.1(b)(6)(B) applies where the firearm bears a functional relationship to another, distinct offense, rather than merely overlapping with the same underlying conduct. *Id.*

Although our cases interpret the word "facilitate" broadly, they consistently focus on whether the firearm altered, advanced, protected, or otherwise affected the separate, distinctive offense. *See United States v. Brooks*, 112 F.4th 937, 956–58 (11th Cir. 2024) (Wilson, J., concurring in part and dissenting in part). In *United States v. Young*, an enhancement applied when the defendant's possession of a firearm increased the danger inherent in a burglary offense. 115 F.3d 834, 837 (11th Cir. 1997). In *United States v. Matos-Rodriguez*, the court upheld an enhancement because the firearm was used in a hand-to-hand counterfeit-money exchange. 188 F.3d

24-12112  ABUDU, J., Concurring in Part and Dissenting in Part    3

1300, 1309 (11th Cir. 1999).  In *United States v. Rhind*, the court affirmed the application of a four-level enhancement because the defendants possessed firearms as part of a counterfeiting money scheme.  289 F.3d 690, 695 (11th Cir. 2002).  Additionally, in *United States v. Carillo-Ayala* and *Bishop*, the court relied on the fact that the firearms could have been used to protect or embolden the defendants while engaging in other criminal activity, such as robbery or drug trafficking.  713 F.3d 82, 94 (11th Cir. 2013); 940 F.3d at 1250.  In all those cases, the firearm played an additive role in relation to another felony offense.

In *Brooks*, Judge Wilson emphasized why that 'separate crime' distinction matters.  "[O]ur precedent focuses on the role firearms played in connection with other, *distinct* offenses," and that the enhancement applies only where the firearm "altered the nature of the *other* offense."  *Brooks*, 112 F.4th at 956 (emphasis in original).  A firearm does not facilitate another felony offense "simply by being the fruit of the other felony offense."  *Id.* (emphasis omitted).  Rather, the firearm must play a role other than merely constituting the object of the offense itself as in Irons's case.  *Id.*

*United States v. James* reinforces that understanding.  135 F.4th 1329, 1335 (11th Cir. 2025).  There, we explained that the phrase "in connection with" requires that the firearm have "some purpose or effect with respect to" the other offense and cannot be present merely by accident or coincidence.  *Id.* at 1335 (quoting

4    ABUDU, J., Concurring in Part and Dissenting in Part    24-12112

*Smith v. United States*, 508 U.S. 223, 238 (1993)).  Thus, *James* emphasized that the inquiry is whether the firearm functioned to facilitate a separate offense.  *Id.*

## II. APPLICATION

Here, Irons's possession of the firearm in a fanny pack did not alter, advance, embolden or protect the concealed-carry offense.  *Id.* (explaining that a firearm must have some purpose or effect with respect to the offense and cannot facilitate it by accident or coincidence).  The enhancement ends up punishing the same conduct when "the gun was an essential element" of the predicate offense itself, resulting in a circular scheme.  *Brooks*, 112 F.4th at 957.  In ordinary English, it makes little sense to say that Irons's concealed firearm possession aids him in concealing a firearm.  *James*, 135 F.4th at 1335, 1336 (explaining there needs to be "an articulable connection between the firearm and the other offense," and the firearm must have "some purpose or effect with respect to" that separate crime.).

The record does not establish the requisite functional nexus contemplated by our precedent.  There is no evidence that Irons used the firearm to advance other criminal activity, embolden himself during the commission of another felony, intimidate others, or facilitate a separate offense in any practical or meaningful sense.  *Brooks*, 112 F.4th at 955–58; *Bishop*, 940 F.3d at 1250.  Instead, the enhancement rests solely on the conclusion that possession of the firearm necessarily facilitated concealment of that same firearm.

24-12112  ABUDU, J., Concurring in Part and Dissenting in Part     5

We should not apply the enhancement in such a circular, self-fulling manner.  Indeed, the Guidelines do not permit converting a single act of unlawful possession into two distinctive sentencing predicates absent some additional facilitative relationship between the firearm and another offense.

### III. CONCLUSION

For these reasons, the district court's application of the four-level enhancement was improper.