[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10289

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DEMETRIS HILL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:21-cr-00043-TES-CHW-1

_____

2                    Opinion of the Court                    23-10289

Before BRANCH, GRANT, Circuit Judges, and CALVERT,* District Judge.

CALVERT, District Judge:

Demetris Hill appeals his convictions for theft of government property, in violation of 18 U.S.C. § 641, and making a false claim to the Railroad Retirement Board ("RRB"), in violation of 18 U.S.C. § 287. Hill contends that the government presented insufficient evidence at trial for a reasonable jury to convict him of either crime, that the district court constructively amended the indictment, and that the False Claims Act is void as applied for vagueness. After careful review of the evidence presented, and with the benefit of oral argument, we affirm Hill's convictions.

**I.**

Hill, a former railroad employee, began receiving monthly disability benefits from the RRB in 2012 on the basis that he was unable to perform substantial gainful activity was and disabled for regular employment. As a condition of receiving disability benefits, Hill was required to report any change in employment status to the RRB, including any ownership in a family business. He certified in writing that he understood this obligation. The RRB paid disability benefits to Hill until October 2022.

On July 8, 2021, Hill was charged in a 60-count indictment

_____

* Honorable Victoria Calvert, United States District Judge for the Northern District of Georgia, sitting by designation.

for theft of government money or property under 18 U.S.C. § 641. Hill was subsequently charged in a superseding indictment with one count of theft of government property, one count of making false claims to the government in violation of 18 U.S.C. § 287, and one count of wire fraud in violation of 18 U.S.C. § 1343. The government alleged that while receiving his monthly disability payments from the RRB, Hill helped his former wife, Kameo Hill, start a janitorial business called SparClean Premier Cleaning Solutions ("SparClean"). Hill proceeded to a jury trial and made a motion for a judgment of acquittal after the government presented its case. The district court reserved ruling and the jury found Hill guilty of theft of government property and making false claims to the government but acquitted him of wire fraud. The district court subsequently denied Hill's motion for judgment of acquittal. Hill was sentenced to 33 months for each conviction, to be served concurrently, followed by three years of supervised release on the theft of government property conviction and two years of supervised release on the false claims conviction, to be served concurrently. Hill then filed a timely appeal of his convictions.

After a limited remand from this Court, the district court granted Hill's motion for a sentence reduction and reduced his term of imprisonment to 27 months. As Hill challenged his convictions and not his sentence, the district court's sentence reduction does not affect our consideration of his appeal.

## II.

We review both a challenge to the sufficiency of the

evidence and the district court's denial of a motion for a judgment of acquittal de novo. *See United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011). In considering the sufficiency of the evidence, we view the evidence in the light most favorable to the government, with all inferences and credibility choices made in the government's favor, and affirm the conviction if, based on this evidence, a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.* It is not necessary that the evidence presented at trial excludes every reasonable hypothesis of innocence or is wholly inconsistent with every conclusion except that of a defendant's guilt. *Id.*

When jury instructions are challenged for the first time on appeal, we review for plain error under Federal Rule of Criminal Procedure 52(b). *United States v. Felts*, 579 F.3d 1341, 1343 (11th Cir. 2009). We also apply plain-error review when determining whether the district court's unobjected-to instruction constructively amended a defendant's indictment. *United States v. Madden*, 733 F.3d 1314, 1316 (11th Cir. 2013). To obtain relief under Rule 52(b), Hill bears the burden of showing "that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected [his] substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (citations omitted). Where a party expressly accepts a jury instruction, "such action constitutes invited error" and "serve[s] to waive [his] right to challenge the accepted instruction on appeal." *United States v. Silvestri*, 409 F.3d 1311, 1337 (11th Cir.

2005).

We ordinarily review a constitutional challenge to a federal statute de novo. *See United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011). But where the challenge is raised for the first time on appeal, we review it only for plain error. *See United States v. Valois*, 915 F.3d 717, 729 n.7 (11th Cir. 2019). Under plain-error constitutional review, "an error cannot be plain unless the issue has been specifically and directly resolved by the explicit language of a statute or rule or on point precedent from the Supreme Court or this Court." *United States v. Sanchez*, 940 F.3d 526, 537 (11th Cir. 2019); *see United States v. Moore*, 22 F.4th 1258, 1266 (11th Cir. 2022) ("[T]here can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving [the issue].") (quoting *United States v. Hesser*, 800 F.3d 1310, 1325 (11th Cir. 2015) (quotations and internal citations omitted).

## III.

Hill raises four arguments on appeal. First, he argues that the government did not provide sufficient evidence for the jury to convict him of theft of government property. Second, he argues that the government did not provide sufficient evidence for the jury to convict him of making a false claim to the government. Third, he argues that the trial court's deliberate ignorance instruction resulted in a constructive amendment of the indictment and invalidates his convictions. And finally, he argues that the False Claims Act is void for vagueness as applied to his conviction. The Court considers each argument in turn.

**A.**

Hill challenges the sufficiency of evidence for his conviction for theft of government property under 18 U.S.C. § 641. A conviction for theft of government property requires the government to satisfy three elements: "(1) that the money or property belonged to the government; (2) that the defendant fraudulently appropriated the money or property to his own use or the use of others; and (3) that the defendant did so knowingly and willfully with the intent either temporarily or permanently to deprive the owner of using the property." *United States v. McRee*, 7 F.3d 976, 980 (11th Cir. 1993) (en banc). Hill argues that the government failed to meet its burden with respect to the first and third elements, and that without the first element, the second element is not met. Specifically, he argues that the government failed to show that he was not entitled to the RRB payments and that he knew that he was not entitled to those payments. We disagree and find that the government presented sufficient evidence on both elements.

First, the government presented sufficient evidence that Hill was not entitled to disability payments from the RRB. Under the Railroad Retirement Act of 1974 ("Act"), 45 U.S.C. §§ 231 to 231v, which is administered by the RRB, railroad workers are entitled to receive monthly disability benefits if their "permanent physical or mental condition is such that they are unable to engage in any regular employment." 45 U.S.C. § 231a(a)(1)(v). The Act provides that "[s]uch satisfactory proof shall be made from time to time as prescribed by the Board, of the disability . . . and of the continuance

of such disability." 45 U.S.C. § 231a(a)(3). "If the individual fails to comply with the requirements prescribed by the Board as to proof of the continuance of the disability . . . , his right to [the disability annuity] shall . . . cease[.]" 45 U.S.C. § 231a(a)(3).

The RRB has promulgated regulations that define "unable to engage in any regular employment" as "unable to do any substantial gainful activity because of a medically determinable physical or mental impairment[.]" 20 C.F.R. § 220.26; *see* 20 C.F.R. § 220.112(a). "[S]ubstantial gainful activity," in turn, means "work activity that involves doing significant physical or mental activities . . . that the claimant does for pay or profit[.]" 20 C.F.R. § 220.141(a), (b). The regulations clarify, however, that work is "substantial gainful activity" even if "done on a part-time basis" and "whether or not a profit is realized." *See* 20 C.F.R. § 220.141(a); 20 C.F.R. § 220.141(b).

The RRB regulations also instruct the decisionmaker to consider the characteristics of the work, explaining that "[i]f the claimant's duties require use of the claimant's experience, skills, supervision and responsibilities, or contribute substantially to the operation of a business, this tends to show that the claimant has the ability to work at the substantial gainful activity level." 20 C.F.R. § 220.142(a). "[E]arnings," too, "may show the claimant has done substantial gainful activity." 20 C.F.R. § 220.143. And for self-employed recipients, "[s]upervisory, managerial, advisory or other significant personal services that the claimant performs as a self-employed person may show that the claimant is able to do

substantial gainful activity." 20 C.F.R. § 220.142(d). In the self-employment context, the RRB looks beyond the earnings of the business and "will consider the claimant's activities and their value to the claimant's business," because "the amount of income the claimant actually receives may depend upon a number of different factors like capital investment, profit sharing agreements, etc." 20 C.F.R. § 220.144(a). ("The Board will evaluate the claimant's work activity on the value to the business of the claimant's services regardless of whether the claimant receives an immediate income for his or her services.").

The RRB regulations also contain reporting requirements. "Any annuitant receiving an annuity based on disability must report to the Board any work and earnings[.]" 20 C.F.R. § 220.162(a). A disability annuity recipient must "promptly tell" the RRB if his impairment improves, if he returns to work, if he increases the amount of work he performs, or if his earnings increase. *See* 20 C.F.R. § 220.175(b), (c). Recipients are required to file an earnings report for any month in which their earnings exceed $400. 20 C.F.R. § 220.162(b). This reporting duty is critical because the RRB "conducts continuing disability reviews to determine whether or not the annuitant continues to meet the disability requirements of the law." 20 C.F.R. § 220.186(a); *see* 20 C.F.R. § 220.140 ("If the claimant is able to engage in substantial gainful activity, the Board will find that the claimant is not disabled for any regular employment under the [Act]."). If a recipient is not disabled, then under the Act "his right to an annuity by reason of such disability shall . . . cease[.]" 45 U.S.C. § 231a(a)(3); *see* 20 C.F.R.

§ 220.176 ("The Board must first consider whether the annuitant has worked and, by doing so, demonstrated the ability to engage in substantial gainful activity. If so, the disability will end.").

The Act and the regulations conditioned Hill's eligibility on whether he engaged in substantial gainful activity and whether he reported his activity accurately. The government presented sufficient evidence for the jury to find both that Hill participated in substantial gainful activity that rendered him ineligible for the annuity, and likewise failed to disclose it to the RRB, despite knowledge of his reporting obligations. Having received the money anyway, Hill knowingly deprived the government of its property.

At trial, the government presented sufficient evidence for the jury to find that Hill contributed substantially to the operation of SparClean and demonstrated his ability to engage in regular employment. First, Hill was an equity owner of SparClean and entitled to a percentage of its profits. Second, he was its chief financial officer, was an authorized signer on its checking account, and helped procure loans on its behalf. Third, he told Morris Bank that he would repay a personal loan with his "business income," which he represented was "$125,000." Finally, Hill attended business meetings with SparClean's prospective clients, prepared written job proposals for SparClean's prospective clients, coached his ex-wife on how to conduct SparClean's business affairs, took measurements of prospective clients' properties, and performed physical cleaning activities himself.

Hill argues that the evidence was insufficient to establish that he was no longer entitled to the annuity benefit because there was no evidence regarding his earnings and whether it exceeded the cap for eligibility set by the RRB. However, Hill's eligibility depended on whether he was able to work. *See* 45 U.S.C. § 231a(a)(1)(v) (establishing the RRB disability annuity for individuals whose "permanent physical or mental condition is such that they are unable to engage in any regular employment."). Earnings are one factor the RRB considers to determine whether a claimant has performed substantial gainful activity, but for self-employed individuals, the RRB considers the value of the work to the business regardless of earnings. *See* 20 C.F.R. § 220.143 ("[E]arnings *may* show the claimant has done substantial gainful activity.") (emphasis added); 20 C.F.R. § 220.144(a) ("The Board will evaluate the claimant's work activity on the value to the business of the claimant's services regardless of whether the claimant receives an immediate income for his or her services."); 20 C.F.R. § 220.142(a) ("If the claimant's duties require use of the claimant's experience, skills, supervision and responsibilities, or contribute substantially to the operation of a business, this tends to show that the claimant has the ability to work at the substantial gainful activity level.").

Furthermore, Hill is incorrect that there was no evidence related to his earnings. The jury heard evidence of the $125,000 income that he declared to Morris Bank—far more than the RRB earnings cap of $11,875 for 2019—and his representation that he would use "business income" to repay a $106,250 personal loan

that he applied for. At trial, Hill argued that the government failed to prove the source of the $125,000 income that he declared to Morris Bank, suggesting that it could have come from a source other than SparClean that would not impact his RRB eligibility such as a stock portfolio, a mutual fund, or his savings. However, in reviewing the sufficiency of evidence, the Court must "accept all reasonable inferences that tend to support the government's case." *United States v. Moran*, 57 F.4th 977, 981 n.4 (11th Cir. 2023). A rational jury could reasonably infer that the $125,000 income Hill reported to Morris Bank was, as he represented it, "business income" from the business he owned. This evidence, along with the rest of the evidence presented at trial and the reasonable inferences raised, credited by the jury, provides sufficient evidence that Hill exceeded the earnings cap and disqualified himself from receiving disability payments. *See United States v. Peters*, 403 F.3d 1263, 1268 (11th Cir. 2005) ("[W]e are bound by the jury's credibility determinations, and by its rejection of the inferences raised by the defendant.").

Hill also challenges the sufficiency of the government's evidence that he acted with knowledge by arguing that he did not know that he was disentitled to the payments because the RRB neither stopped giving him the payments nor changed his eligibility. We disagree and find the government met its burden.

When Hill submitted his application to the RRB, he declared: "I understand that I am responsible for reporting events that would affect my annuity." As a condition for receiving the

annuities, Hill declared and acknowledged the following requirements:

> *I agree to immediately notify the RRB, if,* . . . [1] *I perform work, including self-employment, for a family owned controlled or managed business, including a business operated, managed or owned by me, a family member,* friend or close associate *whether for pay or not* and without regard to how the business is organized (e.g., sole proprietorship, partnership, corporation, LLC, etc.); [2] *I become a corporate officer* of, own or operate a corporation, (including a corporation owned by a family member or friend), *whether for pay or not*; [or] [3] I receive anything of value in lieu of salary or wages for any work that I perform.

Hill further acknowledged that failure to report any work to the RRB was a federal crime: "I know that if . . . I fail to . . . report employment of any kind to the RRB, I am committing a crime which is punishable under Federal law."

After his application was approved and he began receiving the annuity payments in 2012, Hill received annual written reminders that he was required to report to the RRB any work he performed so that the RRB could determine whether he remained eligible to continue receiving monthly disability benefits. Despite his acknowledgements and annual reminders, Hill failed to report

that he was an equity owner in SparClean and that he was its chief financial officer. By failing to report his involvement with SparClean, the RRB lacked any foundation to make a redetermination as to his continued eligibility. Therefore, Hill knowingly concealed information that he was required to report to the RRB while continuing to receive a benefit that he was not entitled to. *See United States v. Slaton*, 801 F.3d 1308, 1316 (11th Cir. 2015) (affirming § 641 conviction because the evidence showed that defendant misrepresented or concealed information that would have allowed the government agency to determine whether he was entitled to disability benefits).

Hill's reliance on *United States v. Moore*, 504 F.3d 1345 (11th Cir. 2007), is unpersuasive. In *Moore*, the Court held that the district court erred in denying a Rule 29 motion of acquittal because the government failed to present evidence of "any knowledge that [the defendants] were not entitled to keep receiving" government benefits. *Id*. at 1349. In contrast, Hill was told initially and reminded annually that he was required to report employment and could face criminal penalties if he did not. Furthermore, the trial court allowed Hill to argue his lack of knowledge and instructed the jury on a good-faith defense. The jury rejected Hill's contention. Construing the evidence in the light most favorable to the verdict, there was sufficient evidence of Hill's knowledge.

We affirm Hill's conviction for theft of government property.

**B.**

Hill also challenges the sufficiency of the evidence underlying his conviction for making a false claim to the government in violation of 18 U.S.C. § 287. In order to obtain a conviction for making false claims to the government, "the government must establish that: (1) the defendant presented a claim against the United States to an agency or department thereof; (2) such claim was false, fictitious, or fraudulent; and (3) the defendant knew that the claim was false, fictitious, or fraudulent." *United States v. Hesser,* 800 F.3d 1310, 1320 (11th Cir. 2015).

Although Hill admits that he failed to report work and earnings, he asserts that the government failed to prove that he affirmatively presented a false claim to the RRB after he initially applied for the disability payments. He further argues that the trial court erred in holding that Hill's receipt of the monthly disability payments via direct deposit into his account was sufficient evidence that he submitted a false claim. We hold that there was sufficient evidence that Hill made false claims to the government.

As the Court has already discussed, there was sufficient evidence to find that Hill was not entitled to the RRB payments because he engaged in substantial gainful activity and failed to comply with the reporting requirements. At trial, the evidence showed that Hill received his RRB annuity payments via direct deposit each month. Yet he never informed the RRB of his affiliation with SparClean and never tried to stop the payments. Thus, the issue before the Court is whether receiving direct

deposits can satisfy the "making or presenting" actus reus of 18 U.S.C. § 287.

It is well established that endorsing a check for which you are not entitled can constitute a false claim against the government. *See Peterson v. Weinberger*, 508 F.2d 45, 54 (5th Cir. 1975) (holding that endorsing and depositing checks to which defendant was not entitled constitutes making a false claim);[1] *accord United States v. Branker*, 395 F.2d 881, 889 (2d Cir. 1968); *United States v. Allen*, 13 F.3d 105, 108 (4th Cir. 1993).

Hill argues that his passive conduct of receiving benefits without making an affirmative request does not equate to presenting a claim to the government. But as a condition of receiving the annuity payments, Hill knew that he had a duty to report employment or business ownership of any kind. Therefore, every time Hill received an RRB payment via direct deposit to his bank account while failing to disclose his involvement with SparClean, he presented a false claim. *See Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 187 (2016) ("When, as here, a defendant makes representations in submitting a claim but omits its violations of statutory, regulatory, or contractual requirements, those omissions can be a basis for liability if they render the defendant's representations misleading[.]"); *McNutt ex rel. United States v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir.

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down by the close of business on September 30, 1981.

2005) ("When a violator of government regulations is ineligible to participate in a government program and that violator persists in presenting claims for payment that the violator knows the government does not owe, that violator is liable, under the Act, for its submission of those false claims[.]").

Hill's argument that he did not present a false claim because he received the annuity payments via direct deposit instead of a physical check he endorsed and deposited is unpersuasive. Liability for making a false claim is not dependent on *how* the government pays the benefit. Rather, what matters is what the claimant did to get that payment. Hill knew that he had a continuing obligation to inform the RRB about his self-employment and failed to do so. For years, he continued to receive and spend monthly payments into his account and did not take any steps to alert the RRB of his changed circumstances or stop the deposits. For these reasons there was sufficient evidence that Hill made false claims to the government, and we affirm his conviction.

## C.

Hill next argues that the deliberate avoidance jury instruction amended the indictment's charge that he "knowingly" violated the law. "Where a party expressly accepts a jury instruction, such action constitutes invited error and serves to waive his right to challenge the accepted instruction on appeal." *United States v. House*, 684 F.3d 1173, 1196 (11th Cir. 2012) (quotation marks and alteration omitted). We have held that when "a party responds to a court's proposed jury instructions with the

words 'the instruction is acceptable to us,' such action constitutes invited error. These words serve to waive a party's right to challenge the accepted instruction on appeal." *Silvestri*, 409 F.3d at 1337 (quotation omitted).

Hill accepted the deliberate avoidance pattern instruction at the charge conference and did not object after the charges were read to the jury. Thus, Hill's acceptance constitutes invited error and he has waived his right to challenge the deliberate avoidance instruction now.

**D.**

Finally, Hill argues that his conviction is invalid because 18 U.S.C. § 287 is unconstitutionally vague as applied to him. This argument was not raised in the district court and so it is subject to plain-error review under Rule 52(b). *See United States v. Gallardo*, 977 F.3d 1126, 1139 n.9 (11th Cir. 2020) ("[A] defendant forfeits an argument he failed to raise below in the district court and we review for plain error only[.]"). Hill asserts that § 287's decree that "whoever *makes* or *presents* . . . any claim upon . . . the United States . . . *knowing such claim to be false* . . . shall be imprisoned" did not provide adequate notice that his conduct was a crime. He argues that the words "makes," "presents," and "knowing such claim to be false" are impermissibly vague because "[n]othing in the wording of the statute gives an ordinary person of common intelligence fair notice that continuing to *receive* benefits—to which you have been properly determined to be eligible—and never making an affirmative claim to the government that you are still

entitled to those benefits" could result in prosecution.

"An error cannot be plain unless the issue has been specifically and directly resolved by the explicit language of a statute or rule or on point precedent from the Supreme Court or this Court." *Sanchez*, 940 F.3d at 537; *see Moore*, 22 F.4th at 1266 (same). Hill has identified no case holding that § 287 is unconstitutionally vague—either facially or as applied to particular conduct. Moreover, as explained above, because Hill accepted the direct deposits without reporting his self-employment, he did more than just receive benefits. Accordingly, the district court did not err, plainly or otherwise, by entering judgment on the jury's verdict finding Hill guilty of making a false claim to the government.

## IV.

The district court's judgment is **AFFIRMED**.