**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 23-10069

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DARRYL ODELY, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:22-cr-60183-WPD-1

_____

Before JORDAN and BRASHER, Circuit Judges, and GERAGHTY,[1] District Judge.

PER CURIAM:

Following a three-day trial, a jury convicted Darryl Odely, Jr. of sex trafficking of a minor by force or coercion in violation of 18 U.S.C. § 1591. He now appeals his conviction on a number of grounds.

## I

We set out the evidence presented at trial in the light most favorable to the government, *see United States v. Smith*, 821 F.3d 1293, 1296 (11th Cir. 2016), and then summarize the relevant procural history.

## A

In 2021, the minor victim, D.M.C., ran away from home and was reported missing by her family. She was recruited into prostitution first by a woman named Keke, then by another woman named Skittles.

While working as a prostitute for Skittles, D.M.C. met Mr. Odely, who paid her for sex. After she got into an argument with Skittles, D.M.C. called Mr. Odely and asked him to pick her up. She moved into his mother's house with him and lived there for two

---

[1] Honorable Sarah E. Geraghty, United States District Judge for the Northern District of Georgia, sitting by designation.

months.  When Mr. Odely's mother was evicted they began living out of a car.

During her testimony, D.M.C. told the jury that Mr. Odely "manipulated" her into sex work.  Mr. Odely posted online prostitution advertisements for D.M.C. and handled most of the text negotiations with customers.  Mr. Odely also transported D.M.C. to meet customers and often received payments from customers through his Cash App account.  D.M.C. also testified that when she "didn't feel like having sex with [customers] anymore" she and Mr. Odely "started robbing them."  She said that Mr. Odely provided her with "beans" (a type of upper) and marijuana.

D.M.C. said that she was scared of Mr. Odely and that he hit her, choked her, threatened to kill her, and broke her phone to prevent her from accessing her contacts.  She explained that some of this violence occurred during arguments about Mr. Odely's ongoing relationship with the mother of his child.

Police eventually located D.M.C. at a hotel with Mr. Odely and arrested him.  A grand jury charged Mr. Odely with sex trafficking of a minor by force or coercion in violation of 18 U.S.C. § 1591.

## B

The government sought to admit at trial a videotaped statement Mr. Odely had made to the FBI when he was arrested.  The government agreed to redact references to his prior criminal history from the transcript of the statement.  Defense counsel objected to providing the jury the redacted transcript, but the district

court overruled the objection and the government presented it to the jury. The transcript mistakenly contained Mr. Odely's unredacted statement that he "did nine years" in prison.

During deliberations, the jury asked to play Mr. Odely's videotaped statement, and then later requested to re-read the transcript of the statement. Defense counsel maintained his objection to the transcript, and the district court agreed not to provide it to the jury again, and instead instructed the jury that "[a]lthough the transcript was identified as Exhibit 16, it was actually a demonstrative exhibit, and, as such, does not go back to the jury." D.E. 88 at 50.

The jury next requested assistance with poor computer volume and was provided with speakers. The jury also requested a transcript of the trial testimony. Defense counsel requested that the district court ask the jury what portion of the testimony it wanted transcribed but the government objected to this request. The district court denied the defense's request, instead instructing the jury that "[y]ou can't just push a button to get the transcript. It takes quite a bit of time to prepare transcripts, so I'm going to ask that you rely on your collective recollection of what the testimony was." *Id.* at 55. The court stated, outside the presence of the jury, that if the jury submitted an additional request for a specific transcript it would provide that specific portion.

The jury found Mr. Odely guilty of commercial sex trafficking of a minor by use of force. The district court denied Mr.

Odely's motion for a new trial and sentenced him to 300 months of imprisonment followed by five years of supervised release.

## II

On appeal, Mr. Odely argues that (1) the indictment, the jury instructions, and the special verdict form all misstated the requisite mens rea, and the special verdict form did not track the specific statutory language of the force provision in 18 U.S.C. § 1591(c), and therefore (a) he was impermissibly convicted of a non-existent offense and (b) the indictment was constructively amended; (2) the district court erred by allowing the case agent to offer an opinion based on hearsay; (3) the district court erred by admitting and then failing to mitigate the interview transcript's reference to his criminal history; (4) the district court violated his constitutional right to testify by discouraging him from doing so; (5) the district court erred by denying the jury's request for a transcript of the testimony; and (6) these cumulative errors deprived him of a fair trial.

Because Mr. Odely challenges his conviction on multiple grounds, we apply several different standards of review.

First, we review a forfeited challenge to an indictment for plain error. *See* Fed. R. Crim. P. 12; *United States v. Reed*, 941 F.3d 1018, 1020–21 (11th Cir. 2019).

Second, we generally review a constructive amendment claim de novo, but if the claim was forfeited we review for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731–32 (1993); *United States v. Holt*, 777 F.3d 1234, 1261 (11th Cir. 2015). And if the defendant expressly agreed to the jury instruction

that he contends caused the constructive amendment, the invited error doctrine precludes appellate review of the instruction. *See United States v. Hill*, 119 F. 4th 862, 866 (11th Cir. 2024).

Third, we review a district court's rulings on the admission of evidence and its responses to jury questions for abuse of discretion. *See United States v. Jiminez*, 224 F.3d 1243, 1249 (11th Cir. 2000); *United States v. Lopez*, 590 F.3d 1238, 1248 (11th Cir. 2009).

Fourth, we generally apply plenary review to allegations that a district court violated a defendant's right to testify. *See United States v. Watts*, 896 F.3d 1245, 1252 (11th Cir. 2018); *United States v. Van De Walker*, 141 F.3d 1451, 1452 (11th Cir. 1998).

### III

A defendant commits the offense of sex trafficking if he "knowingly"

> (1) in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; *or*
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact [either] that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used

> to cause the person to engage in a commercial sex act [**the force provision**], *or* that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act [**the minor provision**].

18 U.S.C. § 1591(a) (emphasis and brackets added). Sex trafficking under the force provision, or if the minor is under the age of 14 at the time of the offense, carries a sentence of 15 years to life imprisonment. *See* § 1591(b)(1). Otherwise sex trafficking carries a sentence of 10 years to life imprisonment. *See* § 1591(b)(2).

Mr. Odely contends that the indictment was deficient in charging a violation of § 1591(a)(1), and that the jury instructions and the verdict form allowed him to be convicted of a non-existent offense. We discuss each argument below.

## A

The indictment alleged, in relevant part, that Mr. Odely,

> knowing, in reckless disregard of the fact, and having had a reasonable opportunity to observe MINOR VICTIM, that means of force, threats of force, and coercion, and any combination of such means, would be used to cause MINOR VICTIM to engage in a commercial sex act, and MINOR VICTIM had not attained the age of 18 years and would be caused to engage in a commercial sex act, in violation of Title 18, United States Code, Sections 1591 (a)(1), (b)(1), (b)(2), and (c), and 2.

D.E. 1 at 1.

Mr. Odely argues that by including the "reasonable opportunity to observe" language with the force provision, the indictment impermissibly rendered the force provision a strict liability crime. He asserts that the indictment therefore fails to charge a crime, and that this constitutes a jurisdictional defect that can be raised at any time under de novo review. *See* Appellant's Br. at 35 (citing *United States Izurieta*, 710 F.3d 1176, 1179–85 (11th Cir. 2013)).

Federal Rule of Criminal Procedure 12 provides that "a defect in the indictment or information," including an indictment's "failure to state an offense," must generally be raised by a pretrial motion. This current language reflects a 2014 amendment to Rule 12. *See United States v. Sperrazza*, 804 F.3d 1113, 1118–19 (11th Cir. 2015). In the wake of this amendment, we review a forfeited claim that an indictment fails to state an offense for plain error. *See id.* at 1119; *Reed*, 941 F.3d at 1020–21.

An indictment is so insufficient as to deprive the district court of jurisdiction only where a crime "d[oes] not exist in the United States Code" or where the conduct "undoubtedly f[alls] outside the sweep of the . . . statute[.]" *United States v. Brown*, 752 F.3d 1344, 1353 (11th Cir. 2014). Otherwise, defects in an indictment do not destroy subject-matter jurisdiction. *See United States v. Cotton*, 535 U.S. 625, 630 (2002) ("[D]efects in an indictment do not deprive a court of its power to adjudicate a case."). "So long as the indictment charges the defendant with violating a valid federal statute as enacted in the United States Code, it alleges an 'offense against the

laws of the United States' and, thereby, invokes the district court's subject-matter jurisdiction." *Brown*, 752 F.3d at 1354. For example, the omission of an element in an indictment, standing alone, does not deprive a district court of jurisdiction over a criminal prosecution. *See United States v. Moore*, 954 F.3d 1322, 1336 (11th Cir. 2020).

With these basics out of the way, we review the language in the indictment for plain error. *See Reed*, 941 F.3d at 1020 (reviewing a forfeited indictment deficiency claim for plain error). To establish plain error, Mr. Odely must demonstrate that there was an error, that the error was plain, and that it affected his substantial rights. *See United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005). If he satisfies these requirements, we can correct the error if it seriously affected the fairness, integrity, or public reputation of judicial proceedings. *See id.*

We have explained that a "defendant is guilty of sex trafficking by force, fraud, or coercion if he 'knowingly in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . . knowing . . . [or in reckless disregard of the fact] that means of force, threats of force, fraud, [or] coercion . . . will be used to cause the person to engage in a commercial sex act.'" *United States v. Baston*, 818 F.3d 651, 663 (11th Cir. 2016) (quoting § 1591(a)(1)) (emphasis deleted). Mr. Odely is correct that the indictment incorrectly linked the "reasonable opportunity to observe" language with the force provision in § 1591(a)(1) because that language applies only to the minor provision. *See United States*

*v. Lockhart*, 844 F.3d 501, 513–14 (5th Cir. 2016) ("§ 1591 allows the Government to prove scienter by showing that the defendant (1) knew the victim was underage, (2) recklessly disregarded that fact, or (3) had a reasonable opportunity to observe the victim"); *United States v. Keys*, 747 Fed. App'x 198, 205–06 (5th Cir. 2018) ("Subsection (b)(1) [of § 1591] requires the government to prove that the defendant knew or recklessly disregarded the fact that the offense would be effected by means of force, fraud, or coercion. Trafficking by force can be charged irrespective of the victim's age. Subsection (b)(2) requires that the government prove that the defendant knew or recklessly disregarded the fact that the victim was under 18 years old. Moreover, under subsection (b)(2), the government can satisfy the intent requirement by demonstrating that the defendant had a reasonable opportunity to observe the victim—it need not demonstrate that the defendant actually knew or recklessly disregarded her age.") (citation omitted).

Assuming that this error was plain, Mr. Odely has not shown that his substantial rights were affected. The indictment used the correct "knowledge" and "in reckless disregard" language for the force provision in addition to the "reasonable opportunity to observe" language. We have held that the inclusion of a superfluous mens rea element does not cause an indictment to allege a non-existent offense, *see United States v. Cancelliere*, 69 F.3d 1116, 1121 (11th Cir. 1995) (explaining that "mere surplusage may be deleted from an indictment without error"), and Mr. Odely has not given us any reason to believe that the erroneous language here prejudiced him. *See United States v. Pena*, 684 F.3d 1137, 1147–48 (11th

23-10069                Opinion of the Court                11

Cir. 2012) ("Minor deficiencies [in an indictment] that do not prejudice the defendant will not prompt this court to reverse a conviction.") (citation and quotation marks omitted).

**B**

We next turn to the jury instructions and the verdict form. The district court instructed the jury, in relevant part, as follows:

> It's a federal crime for anyone in or affecting commerce to recruit, entice, harbor, transport, provide, obtain, maintain or solicit by any means a person knowing and in reckless disregard of the fact, *or having had a reasonable opportunity to observe* the minor victim by means of force, threats of force or coercion will be used to cause the person to engage in a commercial sex act.

D.E. 88 at 39 (emphasis added).  The court went on to instruct the jury that to find Mr. Odely guilty, the government had to prove beyond a reasonable doubt that he

> knowingly recruited, enticed, harbored, transported, provided, obtained, maintained or solicited by any means, the minor victim . . . [and] did so knowing in reckless disregard of the fact, *or having had a reasonable opportunity to observe the minor victim*, that means of force, threats of force, coercion, or other combination of such means would be used to cause the person to engage in a commercial sex act and the person had not attained the age of 18 years and would be caused to engage in a commercial sex act.

*Id*. at 39–40 (emphasis added).

The verdict form was worded in the following way:

**As to the sole count of the Indictment, which charges Defendant DARRYL ODELY[,] JR. with co[m]mercial sex trafficking:**

**GUILTY __X__            NOT GUILTY _____**

**If you find the Defendant GUILTY, did you unanimously find that the Defendant DARRYL ODELY[,] JR.:**

**(a) used means of force, threats of force, or coercion to commit the crime?**

**YES __X__                NO _____**

**(b) knew, acted in reckless disregard of the fact that the Minor Victim was under the age of 18 years, or had a reasonable opportunity to observe the Minor Victim?**

**YES __X__                NO _____**

D.E. 27 at 1 (bold text added).

Mr. Odely argues that these instructions, coupled with the special verdict form's omission of a mens rea, constructively amended the indictment by broadening the requisite intent for conviction and rendering the force element a strict liability crime. He asserts that the jury instruction that minors cannot lawfully consent to commercial sex—coupled with the lack of precision in the indictment, jury instructions, and special verdict form—might have caused the jury to mistakenly conclude that a defendant who is guilty of sex trafficking a minor must necessarily also be guilty of trafficking that minor by force. The government acknowledges that the jury instructions included "imprecise phrasing," Appellee's Br. at 18, but contends that no plain error occurred because there

was overwhelming evidence of knowledge and the government relied on the proper legal standard in its closing argument.

"Where a party expressly accepts a jury instruction, such action constitutes invited error and serves to waive his right to challenge the accepted instruction on appeal. We have held that when a party responds to a court's proposed jury instructions with the words 'the instruction is acceptable to us,' such action constitutes invited error. These words serve to waive a party's right to challenge the accepted instruction on appeal." *Hill*, 119 F. 4th at 871 (involving a constructive amendment claim) (internal quotation marks and citations omitted).

We conclude that, under the invited error doctrine, Mr. Odely has waived any challenge to the jury instructions or the verdict form by expressly agreeing to them. At the charge conference, the district court asked defense counsel to look at the government's proposed instruction on sex trafficking and "see what you think." D.E. 85 at 163. Defense counsel reviewed it and told the district court "[t]he instruction appears correct, Judge." *Id*. And when the district court asked about the verdict form, defense counsel responded "[a]ppears correct, Judge." *Id*. at 164. Under our precedent, Mr. Odely invited the constructive amendment errors that he now complains of. We therefore do not address the constructive amendment claim related to the jury instructions and the verdict form.

**IV**

Mr. Odely next argues that the district court erred by allowing the case agent to offer an opinion based on hearsay. The case agent answered in the affirmative when asked if D.M.C. had said—when interviewed months earlier—"basically what she told you on the stand today." *Id.* at 12. Defense counsel objected to that question as hearsay, but the district court overruled the objection, concluding that the exchange was admissible as a "prior consistent statement."

According to Mr. Odely, because the content of D.M.C.'s prior statement had not been admitted into evidence, the district court could not examine that statement to determine whether it was consistent with D.M.C.'s testimony. And, as a result, the case agent's testimony about that statement could not be properly admitted as a prior consistent statement. As noted earlier, we review a district court's rulings on the admission of evidence for abuse of discretion. *See Jiminez*, 224 F.3d at 1249.

"Hearsay" is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). A statement is not hearsay if

> [t]he declarant testifies and is subject to cross-examination about a prior statement, and the statement:
>
>> (A) is inconsistent with the declarant's testimony and was given under penalty of perjury

at a trial, hearing, or other proceeding or in a deposition;

(B) is consistent with the declarant's testimony and is offered:

(i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or

(ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground[.]

Fed. R. Evid. 801(d)(1). *See generally Tome v. United States*, 513 U.S. 150, 167 (1995) ("The Rule permits the introduction of a declarant's consistent out-of-court statements to rebut a charge of recent fabrication or improper influence or motive only when those statements were made before the charged recent fabrication or improper influence or motive.").

The case agent's answer to the question does not meet the definition of hearsay because it does not appear to have been offered to prove the truth of the matter asserted. The case agent's affirmative answer—which was not accompanied by any specific factual content because D.M.C.'s underlying statement was never introduced—instead served to rehabilitate D.M.C.'s credibility after defense counsel called it into question. *See United States v. Jiminez*, 564 F.3d 1280, 1287 (11th Cir. 2009) (holding that a statement about what was said during a law enforcement interview was not hearsay because it was offered for the purpose of rehabilitating a witness'

credibility, rather than to prove the truth of the matter asserted). We therefore conclude that the district court did not abuse its discretion in admitting the case agent's testimony. *See id.* at 1288 (explaining that "even when the trial judge admits testimony for a stated reason that is improper under the Federal Rules of Evidence, the decision generally will be upheld so long as the testimony is properly admissible on other, non-stated grounds apparent from the record").

## V

Mr. Odely argues that the district court committed reversible error by admitting and then failing to *sua sponte* sufficiently mitigate the interview transcript's reference to his criminal history. We are not persuaded.

We first note that the district court did not choose to admit evidence of Mr. Odely's prior convictions. The court, along with the parties, were under the impression that all references to the prior convictions had been redacted. If anyone was to shoulder the blame for the reference to the convictions in the transcript, it was the parties, who were in charge of making the redactions.

We next address the district court's decision not to issue a curative instruction once it learned that the redaction had not been made. Although defense counsel had objected to admitting the redacted transcript, he did so before knowing about the missing redaction. Once the court notified him of the unredacted references to Mr. Odely's criminal history—which defense counsel acknowledged he "missed" when making the redactions—he did not

request any curative instructions.  *See* D.E. 85 at 129–30.  We therefore review his claim for plain error.  *See United States v. Smith*, 700 F.2d 627, 633 (11th Cir. 1983).

The district court, rather than the parties, noticed the mistakenly unredacted reference in the transcript to Mr. Odely doing "nine years."  The court remarked that "the way it was buried in there, I don't know that the context would be necessarily something that [the jury] would catch," and opted not to provide the transcript to the jury during its deliberations in the hopes of not drawing further attention to the unredacted portion.  *See* D.E. 85 at 130.  Under the circumstances, we cannot say that the court plainly erred in declining to *sua sponte* strike the evidence from the record or issue a curative instruction to the jury.  *See United States v. Emmanuel*, 565 F.3d 1324, 1335 (11th Cir. 2009) (holding that the district court did not abuse its discretion by failing to *sua sponte* issue a curative instruction to a witness' remark about the defendant's prior conviction because "the comment was but a brief reference . . . and a curative instruction could have drawn unwarranted attention to the comment") (quotation marks omitted).

## VI

Mr. Odely claims that the district court violated his right to testify by discouraging him from doing so.  We reject this assertion.

At trial, Mr. Odely told the district court he wanted to testify. The district court informed him of his constitutional right to testify or not to testify, and explained that the choice was ultimately up to

him and not his attorney.  The court then engaged in the following discussion with Mr. Odely:

> [COURT]: There may be strategic reasons for or against your testifying. Do you understand that?
>
> [MR. ODELY]: Yes, Your Honor.
>
> [COURT]: Right now, the jury doesn't know whether you're a convicted felon. If you take the stand and testify, the Government may be able to bring out that you have prior felony convictions if you do. Do you understand that?
>
> [MR. ODELY]: At this point, I'm fighting for my life. I have nothing to hide, sir.
>
> [COURT]: But that may be a strategy reason for or against your testifying. Do you understand that?
>
> [MR. ODELY]: Understood, sir.
>
> [COURT]: And whatever decision you make in this case, you pretty much going are going to be stuck with that decision. Do you understand that?
>
> [MR. ODELY]: Understood, sir.
>
> [COURT]: So for example, if you decide to testify and it turns out that you're a lousy witness and get convicted, you can't complain about that later on because you decided to testify. Do you understand that?
>
> [MR. ODELY]: Understood, sir. . . .
>
> [COURT]: If you decide not to testify and if the jury comes back guilty, you can't come back later on and say, oh, Judge, if the jury would have just heard my

side of the story, they would have let me go. Do you understand that?

[MR. ODELY]: Understood, sir.

[COURT]: So again, whatever decision you make, it's your decision. You know you can listen to your lawyer's advice but it's your life. It's up to you to decide what you want to do. Do you understand that?

[MR. ODELY]: Understood, sir.

[COURT]: And have you had enough time to think about this and talk about it with your lawyer?

[MR. ODELY]: Yes, I did, sir.

[COURT]: And is it your decision that you do or do not want to testify, or is it something you want to think about overnight? You have that right, too. You can think about it.

[DEFENSE COUNSEL]: Judge, in helping in that decision, I'd ask the Government . . . if they have the number of felony convictions, that they would use to impeach with so I can give him that number?

[PROSECUTOR]: We have certified convictions. Felony convictions. He spent nine years in prison.

[DEFENSE COUNSEL]: So the number would be three.

[MR. ODELY]: I want to testify. . . .

[COURT]: All right. And obviously, I sent the jury home so you can do that first thing tomorrow morning at 9:00. If you change your mind, you can change

> your mind but if you don't change your mind, then
> you can testify tomorrow at 9:00.

D.E. 85 at 158–60.  The next morning, defense counsel told the court that Mr. Odely no longer wanted to testify and Mr. Odely confirmed his decision.

Mr. Odely contends that the district court's colloquy improperly interfered with the attorney-client relationship and that by "twice advising Mr. Odely that he could 'think about [it] overnight,' and '[could] change [his] mind,' the [court] further implied that testifying was imprudent."  Appellant's Br. at 60 (alterations in original).  He also argues that the court misled him when it stated that the jury did not know that he had a felony record, because the unredacted transcript referencing his nine years in prison had already been presented.  He contends that this error was not harmless because without his testimony, the jury did not have an alternative narrative to consider, and he was therefore prejudiced.

As a general matter, we "review de novo a claim that a district court denied a defendant's right to testify." *Watts*, 896 F.3d at 1252.  But Mr. Odely, who was represented by counsel, did not object to the colloquy below, and we have said in dicta that it "seems right" to apply plain error review where a represented defendant did not lodge an objection in the district court. *See United States v. Waters*, 937 F.3d 1344, 1358 n.6 (11th Cir. 2019) (bypassing appropriate standard and applying de novo review).  We will conduct plenary review because, even under that standard, Mr. Odely's argument fails.

"A criminal defendant has a constitutional right to choose whether or not to testify[.]" *United States v. Anderson*, 1 F.4th 1244, 1253 (11th Cir. 2021). "[W]here a defendant is represented by counsel, counsel is responsible for providing the advice needed to render the defendant's decision of whether to testify knowing and intelligent," and the district court is generally not required to conduct a colloquy. *See United States v. Ly*, 646 F.3d 1307, 1313 (11th Cir. 2011). Nevertheless, the court may choose to conduct a colloquy to make sure that a defendant fully understands their rights. *See Anderson*, 1 F.4th at 1257.

We have cautioned district courts against "provid[ing] inappropriate commentary" about a defendant's choice to testify or not to testify during a colloquy, because "inserting the . . . court's implied preference would intrude into this protected choice" and might interfere with the attorney-client relationship. *See Ly*, 646 F.3d at 1315–16. *See also United States v. Teague*, 953 F.2d 1525, 1533 n.8 (11th Cir. 1992) (en banc); *Anderson*, 1 F.4th at 1259. Although the court here told Mr. Odely that there might be strategic reasons for not testifying and advised him that the jury might learn about his felony convictions if he took the stand, we cannot say that its colloquy, taken as a whole, impaired Mr. Odely's ability to knowingly and intentionally waive his right to testify. The court told Mr. Odely on several occasions that it was his decision whether or not to testify, and never told Mr. Odely what choice he should make. *See Anderson*, 1 F. 4th at 1259. Moreover, Mr. Odely had the ability to consult with his counsel and think about his choice overnight. *See, e.g., United States v. Joelson*, 7 F.3d 174, 178 (9th Cir. 1993)

(concluding that a defendant's right to testify was not violated despite the court's "troubling" colloquy that appeared to discourage the defendant from testifying, because the court told him that he had a right to testify and "gave him an opportunity to confer with his attorney to finalize his decision").

## VII

Mr. Odely contends that the district court abused its discretion by denying the jury's request for a transcript of the testimony. He asserts that this prejudiced him by undermining the credibility of his counsel, who had told the jury in his closing argument that it could have portions of the transcript read back to it. The government contends that defense counsel made this assurance at his own risk, and that Mr. Odely has failed to establish prejudice in light of the ample evidence against him.

District courts have "broad discretion in responding to a jury request that certain evidence be reread," and their decisions are reviewed for abuse of discretion. *See United States v. Pacchioli*, 718 F.3d 1294, 1306 (11th Cir. 2013) (citation and quotation marks omitted). A court, for example, has discretion to refuse to read back testimony that "is simply too long[.]" *Id. See also United States v. Morrow*, 537 F.2d 120, 148 (5th Cir. 1976) (concluding that the district court did not abuse its discretion in refusing to grant the jury's request for a portion of the transcript because it was lengthy and providing the requested portion might cause jurors to give it undue weight); *Gov't of the Canal Zone v. Scott*, 502 F.2d 566, 570 (5th Cir. 1974) (finding no abuse of discretion in district court's denial of the jury's

request for a transcript because its preparation would cause a delay, and because providing the requested portion might cause jurors to give it undue weight).

Reviewing for abuse of discretion, we discern no error. First, Mr. Odely's trial lasted three days, meaning that it would have taken some time to prepare a full transcript. Second, the jury did not make any request for a specific portion of the transcript. We conclude that the district court acted within its discretion in denying the jury's request for the transcript of the trial.

## VIII

Finally, Mr. Odely argues that the cumulative errors he alleges above deprived him of the right to a fair trial. Because we have found no errors, there is no cumulative error. *See, e.g., United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011) ("Where there is no error or only a single error, there can be no cumulative error.").

## IX

Mr. Odely has not established that the district court committed any error warranting reversal. We therefore affirm his conviction.

**AFFIRMED.**